**STATE of Missouri, Respondent,**

v.

**William F. SMITH, Appellant.**

**No. WD 38585.**

Missouri Court of Appeals,
Western District.

June 9, 1987.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 4, 1987.

Application to Transfer Denied
Sept. 15, 1987.

Melinda K. Pendergraph, Columbia, for appellant.

William L. Webster, Atty. Gen., Colly Frissell-Durley, Asst. Atty. Gen., Jefferson City, for respondent.

Before LOWENSTEIN, P.J., and PRITCHARD and TURNAGE, JJ.

TURNAGE, Judge.

William F. Smith appeals from his conviction of two counts of first degree robbery, § 569.020, RSMo 1986, two counts of armed criminal action, § 571.015, RSMo 1986, and one count of second degree murder. § 565.021.1(2), RSMo 1986. Smith argues that the trial court erred in preventing his counsel from arguing an adverse inference from the State's failure to call certain witnesses; in allowing joinder of the various charges against him and in refusing to sever the charges for trial; and in failing to grant a mistrial due to two comments made during trial.

Affirmed.

Smith was charged and tried for crimes he committed in three incidents on the evenings of January 14 and 15, 1985.

On January 14, 1985 at about 10:00 p.m., Smith entered a Church's Chicken restaurant at 40th Street and Troost in Kansas City. He threatened the cashier with a gun and robbed her of fried chicken and money. His friends, Bryant Washington, Wilfred Brooks, and Willie Alexander, waited for him outside Church's. Smith joined them after the robbery, and shared with them his ill-gotten chicken. The cashier from Church's identified Smith's picture in a photo array and identified Smith at trial as the robber. Police lifted a fingerprint from the counter of Church's, and expert testimony established that the print was Smith's.

Smith and his three friends walked on to a Seven-Eleven store on the same block. Again, Smith's friends waited outside the business, while Smith went in. Smith again used a gun to rob the cashier of merchandise (liquor) and money. As Smith left, he fired two shots into the store. The assistant manager of the Seven-Eleven identified Smith as the robber at a video line-up and at trial. Furthermore, automatic surveillance equipment at the store photographed Smith during the robbery, and these photographs were introduced at trial.

Smith ran to rejoin his friends outside the Seven-Eleven. Alexander testified that he had heard shots just before he saw Smith round the corner towards his friends after leaving the Seven-Eleven. The foursome returned to Deborah Johnson's apartment, where Smith was living. Smith put the money he had stolen under the sofa in the apartment. The friends shared the liquor Smith had taken from the Seven-Eleven.

The next evening, January 15, 1985, Smith and his friends returned to the corner of 40th and Troost, this time to Antone's Liquor Store. Again, Smith's friends waited while he entered the store alone. Alexander testified that sometime later Smith came running out of the store, carrying a sack containing money and liquor. On the way home, Alexander heard Smith say he had "hit him in his chest" and that "he just fell."

Inside Antone's the manager, Earl Vince McCann, had been shot to death by a wound to the chest. Antone's clerk Theo Grayson testified that he had been in a back room of Antone's when he heard a shot; he entered the front room of the store and saw a man with a gun, leaning over to get money out of the cash register. Grayson identified Smith at trial as the robber. The State's ballistics expert testified that the bullet that killed McCann was shot from the same gun that fired the shots at the Seven-Eleven the night before.

Again, Smith returned to Deborah Johnson's apartment, and placed the night's proceeds under the sofa. Again, the friends shared the liquor Smith had stolen. Deborah Johnson testified that Smith admitted to her that he had committed the three robberies and the murder.

The manager of the apartment building where Smith was staying contacted the police and led them to the gun used in the robberies—which was in the trash in the apartment building.

Smith was convicted of first degree robbery and armed criminal action in the Church's robbery, first degree robbery and armed criminal action in the Seven-Eleven

robbery, and second degree murder in the killing of McCann.

Smith's first point is that the trial court erred in forbidding Smith to argue to the jury that since the State did not produce Fred Brooks and Bryant Washington as witnesses at trial, the jury could draw the inference that those men's testimony would have been favorable to Smith. The trial court's decision on whether to allow counsel to argue such an inference to the jury is only reversible if the trial court abused its discretion. *State v. Webster,* 659 S.W.2d 286, 288 (Mo.App.1983). No abuse of discretion appears here.

First, Smith deposed both Washington and Brooks prior to trial. No inference arises from a party's failure to call witnesses equally available to both parties. *Id.* In civil cases in this jurisdiction, a witness whom a party has deposed is deemed to be as available to the deposing party as to the other party. *Bean v. Riddle,* 423 S.W.2d 709, 721 (Mo.1968); *Midwest Library Services, Inc. v. Structural Systems, Inc,* 566 S.W.2d 249, 252 (Mo.App.1978); *McMichael, Jury Argument Permitted Regarding Absent Witnesses,* 42 J.Mo.Bar. 37, 39 (1986).[1] This rule is equally sensible in criminal cases. For instance, in this case, since Smith was unable to develop any favorable testimony from Brooks and Washington when he deposed them, it would be illogical to let Smith argue that these witnesses would have aided his case if the State had called them at trial.

Furthermore, a party cannot draw a negative inference from the other side's failure to call a witness whose testimony would only be cumulative to other evidence already adduced by the calling party. *State v. Sanders,* 619 S.W.2d 344, 348 (Mo. App.1981). In this case the State called Willie Alexander, who testified that Washington, Brooks, and he waited outside the three stores that were robbed, while Smith went inside. Alexander testified that Smith returned from each of the three stores with money and booty, that he had a gun the evenings of the robberies, and that Alexander had heard shots while Smith was in the Seven Eleven. Washington's and Brooks' testimony in their depositions was basically consistent with Alexander's. While there are minor differences in the three men's testimony, all recount the same basic story. It would disserve the goal of judicial economy to force the State to put on three versions of the same basic story or else be punished by an adverse inference.

Because Smith deposed Brooks and Washington and because their testimony added nothing to the State's case after Alexander testified, the trial court did not abuse its discretion in prohibiting Smith from drawing a negative inference from the State's failure to call Brooks and Washington.

Smith next argues that the trial court erred in permitting joinder of the charges against him and in refusing to sever the charges for separate trial.

Propriety of joinder in this case is governed by § 545.140.2, RSMo 1986,[2] and former Rule 23.05.[3] While former Rule 23.05

---

1. In one recent case the deposition rule conflicted with another rule of thumb regarding the inference—that a party's employee is deemed to be more available to the employer party than the other party. The court resolved the conflict by use of a balancing test. *See Leehy v. Supreme Express & Transfer Co.,* 646 S.W.2d 786, 790–91 fn. 4 (Mo. banc 1983).

2. Section 545.140.2, RSMo 1986, provides:
   Notwithstanding Missouri supreme court rule 24.07, two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or infractions, or any combination thereof, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

3. Former Rule 23.05 provided:
   All offenses that are based on the same act or on two or more acts that are part of the same transaction or on two or more acts or transactions that constitute parts of a common scheme or plan may be charged in the same indictment or information in separate counts. Former Rule 23.05 was amended effective July 1, 1986 (after the date of trial herein) to include the "similar character" language featured in § 545.140.2.

only authorized joinder of offenses based on "the same act or on two or more acts that are part of the same transaction or on two or more acts or transactions that constitute parts of a common scheme or plan," § 545.140.2 grants the broader permission to join offenses "of the same or similar character." *State v. Warren,* 717 S.W.2d 231, 232 (Mo.App.1986); *State v. Harris,* 705 S.W.2d 544, 550 (Mo.App.1986).

■ In this case, Smith used similar tactics in carrying out his crimes. He entered small businesses at night, using a gun to rob the stores of money and merchandise. The crimes all occurred within twenty-four hours, within one block of each other. The merchandise stolen in each case was immediately consumable—either food or drink. The facts of Smith's crimes are sufficiently similar to justify joinder under cases interpreting § 545.140.2. *See Warren,* 717 S.W.2d at 232; *Harris,* 705 S.W.2d at 550. Therefore, there was no error in joinder of the charges.

■ Smith argues that even if joinder were proper, the court erred in failing to grant separate trials for the various crimes. Denial of a motion to sever is reversible only if the trial court abused its discretion. *Warren,* 717 S.W.2d at 233. To show an abuse of discretion, Smith would have to show that the failure to sever resulted in substantial prejudice under § 545.885.2, RSMo. 1986. No such prejudice exists in this case.

■ Smith argues that he was prejudiced by joint trial of his various crimes, because the evidence linking him to the Church's and Seven-Eleven crimes was strong, while the evidence linking him to the Antone's crime was weak. The evidence of the events in the Seven-Eleven would have been admissible to identify Smith as the Antone's gunman, since the bullet used to kill McCann was shown to have been fired from the same gun as the bullets fired in the Seven-Eleven. Therefore, evidence of the Seven-Eleven crime was relevant to prove Smith's identity as the Antone's gunman, and there was no undue prejudice to Smith from trying the Seven-Eleven offenses together with the Antone's offense. *See Warren,* 717 S.W.2d at 233.

■ Nor was there any abuse of discretion in trying the Church's offense with the other offenses, since the number of offenses charged was relatively few, the evidence offered was not complex, and there was no reason to believe the jury could not distinguish the evidence and legal principles applicable to each offense. *See State v. Sanders,* 714 S.W.2d 578, 585 (Mo.App. 1986).

■ Smith's final point is that the trial court erred in failing to grant a mistrial due to two comments that Smith says implied he had previously been convicted of crimes. A mistrial is a drastic remedy, to be employed only in extraordinary circumstances in which prejudice to the defendant can be removed in no other way. *State v. Morris,* 639 S.W.2d 589, 593 (Mo. banc 1982), *cert. denied,* 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983). The decision to grant a mistrial rests within the trial court's sound discretion and will only be reversed for abuse of that discretion. *Id.* Neither of the comments Smith complains of was so prejudicial that the trial court was obliged to declare a mistrial.

Smith first complains that witness Willie Alexander volunteered a statement intimating that Smith had been convicted of other crimes. While Smith's attorney was cross-examining Alexander about what Smith had worn the night of the Antone's crime, the following exchange took place:

Q: The coat that you were saying William was wearing on the nights of— on the night of the Antone's robbery, you said to the police it was dark green, is that correct, sir?

A: The night of Antone's?

Q: Yeah.

A: I didn't say it was dark green. I said it was a green jacket, prison jacket, the kind that they use in prison.

■ This statement is simply not the sort of seriously prejudicial event that mandates a mistrial. Ostensibly, it only describes the jacket Smith was wearing.

Only by inferring facts not in evidence (that the jacket belonged to Smith, that he was its original owner, etc.) could the jury have concluded that Smith had been previously convicted of crimes.

Furthermore, Alexander volunteered this statement upon examination by Smith's counsel, and there is not the slightest hint of prosecutional misconduct. Smith did not ask the court to admonish the jury to disregard the statement.

In sum, the trial court acted well within its discretion in denying Smith's motion for mistrial after Alexander's statement.

Next, Smith argues that the prosecutor implied he had been previously convicted of crimes. At the outset of his examination of State's witness Virgil Lampkin, the prosecutor asked Lampkin the details of his past convictions, in an apparent effort to avoid later impeachment of Lampkin by Smith. To preface his questioning about Lampkin's crimes, which were wholly unrelated to this case, the prosecutor said to Lampkin:

Q: All right, Mr. Lampkin, we brought you here to testify about your knowledge of the robberies of the Church's and 7–11 and the homicide-robbery of Antone's Liquor Store, and before I start asking you, as we discussed, the jury is entitled to hear any of the criminal convictions of any witness who testifies in a case. I want to get that out of the way first. Sir, have you ever been convicted of a crime?

Smith argues that by saying that the jury was entitled to know about past crimes of anyone who testified, the prosecutor intimated that if a person did not testify, evidence of his crimes would not be admissible. Smith further argues that the jury must have inferred that since Smith did not testify, he must have chosen not to in order to avoid admission of past crimes.

■ The possibility of prejudice Smith proposes is quite remote and requires the court to assume the jury engaged in unwarranted assumptions and inferences. On the other hand, the innocent purpose of the statement—to explain why the prosecutor was introducing evidence that seemed

irrelevant—is apparent in the context in which it occurred. No mistrial was required here.

The judgment is affirmed.

