**STATE of Missouri, Respondent,**

v.

**Michael JOHNSON, Appellant.**

**No. 15092.**

Missouri Court of Appeals,
Southern District,
Division One.

May 12, 1988.

Motion for Rehearing or Transfer to Supreme Court Denied June 2, 1988.

Application to Transfer Denied
July 26, 1988.

Susan L. Hogan, Columbia, for appellant.

William L. Webster, Atty. Gen., Karen A. King, Asst. Atty. Gen., Jefferson City, for respondent.

CROW, Chief Judge.

Michael Johnson ("appellant") was found guilty by a jury of three counts of burglary in the second degree, § 569.170, RSMo 1978, and two counts of stealing property of the value of $150 or more, § 570.030, RSMo Supp.1985. The jury assessed punishment at two years' imprisonment on each count; the trial court specified that the sentences run consecutively. § 558.026.1, RSMo 1986.

Appellant maintains the trial court erred in (1) permitting the prosecutor to adduce from the state's key witness—appellant's accomplice—that the two had met while they were in jail, (2) allowing one of the burglary counts and one of the stealing counts to be joined with the remaining counts, and in failing to sever such counts for trial, (3) proceeding with the trial after the prosecutor used a peremptory challenge to exclude a black venireman from the jury, (4) permitting a police officer to testify as to what one of the victims had said was stolen, and (5) denying appellant's challenge for cause against a venireman.

On October 25, 1985, a break-in occurred at the home of Mary Barton, 1010 Spring, Poplar Bluff. Jewelry and groceries were taken. Count V of the information charged appellant with burglary regarding that incident.

On November 3, 1985, a break-in occurred at the home of Lacy Wright, 950 Hickory, Poplar Bluff. A VHS video recorder, an AM/FM dual cassette player, assorted jewelry, a knife collection, and several watches were taken. Count III of the information charged appellant with burglary regarding that incident; count IV charged him with stealing regarding the incident.

On April 30, 1986, a break-in occurred at Spirit Originals, a jewelry store in the Mansion Mall at Poplar Bluff. Jewelry worth

between $6,000 and $7,000 was taken. Count I of the information charged appellant with burglary regarding that incident; count II charged him with stealing regarding the incident.

The only evidence linking appellant to any of the crimes was the testimony of Charles Palmer. During the prosecutor's direct examination of Palmer the following colloquy occurred, which forms the basis of appellant's first assignment of error:

"Q. When did you first meet Michael Johnson?

A. It's been about two years ago. I met him in the Butler County Jail.

. . . .

Q. Charles, while you and Mr. Johnson were in the Butler County Jail did you and he have any discussions about what you all would do when you got out?

A. He said that we would get together and we would pull a couple of good jobs. He had heard quite a bit about what I was doing before I got arrested.

Q. You have committed several burglaries in this county, haven't you?

A. Yes, sir, I have.

Q. I mean that's the way you used to make your living, wasn't it?

A. Yes, sir, it was.

. . . .

Q. Charles, while you all were in jail was there much to do while you all were up there?

A. No, sir, there was not.

Q. Did you and this defendant have time to sit around and discuss your plans for when you got out?

A. Yes, sir, we did.

Q. And at that time you and this defendant entered into an agreement to jointly—

A. Yes, sir, we did.

Q.—form like a partnership—

A. Yes, sir, we did.

Q. —to go out and commit burglaries?

A. Yes, sir."

Prior to trial appellant filed a motion in limine imploring the court to bar the prosecutor from asking Palmer where he had met appellant, as Palmer's answer would constitute evidence of "past convictions" or "bad acts," thereby violating appellant's right to stand trial only for the crime charged. The trial court denied the motion, remarking, "To rule otherwise would create a new type of immunity from prosecution in my estimation for any conspiracy or like activity in a jail cell." Appellant registered the same objection at trial; it was overruled.

Palmer testified without objection that he, appellant, and a third individual broke into the house at 1010 Spring in October, 1985. Palmer explained that he used a screwdriver to pop the bottom board off the trim around a door window, then inserted the screwdriver beneath a corner of the window "which broke it off." He then reached inside and opened the door. According to Palmer, the intruders took "a couple of jewelry boxes, which contained a bunch of Avon jewelry, which wasn't of no value."

Palmer recounted that he and appellant broke into the house at 950 Hickory in early November, 1985. Entry was gained by using a screwdriver to pry out a window frame above the kitchen sink. Palmer and appellant took the items reported *supra* and divided them. Asked whether any of the loot was subsequently sold or traded, Palmer replied that appellant "found a guy" that was interested in the cassette player.

Palmer revealed that he and appellant broke into the Mansion Mall on April 30, 1986. Asked how entry was made, Palmer narrated that the duo climbed "some gas pipes" to the roof where they used a screwdriver to remove screws from "two or three skylights." They then used a rope Palmer had bought the preceding day to climb down through one of the skylight openings into the Mall. Once inside, they "busted open all the jewelry cabinets" at Spirit Originals and "cleaned out the jewelry and stuff." Asked what was done with the booty, Palmer replied, "[W]e took it home and we divided it up." Palmer added that they subsequently sold "[e]very bit of

it that had any kind of market value" to a "fence" found by appellant.

Palmer also testified, without objection: "Q. But after all these burglaries you all got, you got your share and he got his share?
A. Yes, I did.
. . . .
Q. You and Michael Johnson were partners, weren't you?
A. Yes, sir, we were.
Q. Everything you testified to that you did was done in conjunction with Michael Johnson?
A. Yes, sir.
Q. With his aid and assistance?
A. Yes, sir.
Q. He benefited from these crimes just as you did?
A. Yes, sir.
. . . .
Q. In other words you and Michael Johnson, I think I stated this before or asked you this before, you all were in business to do this sort of thing, weren't you?
A. Yes, sir, we were.
Q. Partnership, in a joint venture?
A. Yes, sir, we were."

Appellant's first point states that allowing Palmer to reveal he met appellant while they were in jail deprived appellant of his constitutional right of due process, as such testimony "constituted evidence of other crimes not related to the cause on trial, and the probative value of such evidence was clearly outweighed by its prejudicial effect." Appellant cites *State v. Kenley*, 693 S.W.2d 79, 81 (Mo. banc 1985), *cert. denied*, 475 U.S. 1098, 106 S.Ct. 1500, 89 L.Ed.2d 900 (1986), for the proposition that as a general rule, evidence of uncharged crimes is inadmissible unless such evidence has a legitimate tendency to establish the accused's guilt of the crime charged. Appellant acknowledges that under *State v. Shaw*, 636 S.W.2d 667, 671–72[4] (Mo. banc 1982), *cert. denied*, 459 U.S. 928, 103 S.Ct. 239, 74 L.Ed.2d 188 (1982), proof of an accused's commission of separate and distinct crimes is admissible to prove the crime charged when such evidence tends to establish motive, intent, the absence of mistake or accident, a common scheme or plan embracing the commission of two or more crimes so related that proof of one tends to establish the other, or the identity of the person charged with the commission of the crime on trial.

Appellant insists that in the instant case, Palmer's disclosure that he met appellant while they were in jail constituted evidence of other crimes, as the jury would assume appellant had been arrested "apparently for committing some type of crime." According to appellant, no necessity existed to warrant admission of such evidence, and the negligible probative value thereof was far outweighed by its prejudicial effect. Appellant reminds us that under *State v. Collins*, 669 S.W.2d 933, 936[3] (Mo. banc 1984), evidence of the accused's commission of other crimes is highly prejudicial, and may be admitted only when there is strict necessity and the probative value outweighs the prejudicial effect.

■ *State v. Laws*, 668 S.W.2d 234, 237[1] (Mo.App.1984), holds that evidence that the accused has been in prison is evidence that he has committed other crimes. For the purpose of appellant's first point we shall assume, without deciding, that evidence that an accused has been in jail is likewise evidence he has committed other crimes.

Appellant does not dispute the admissibility of Palmer's testimony that he and appellant agreed to form a "partnership" for the commission of burglaries and that they sat around and discussed their plans. Appellant complains only about the disclosure that the place where they did so was the county jail.

Had appellant and Palmer met each other and entered into the burglary pact in a public park, a dwelling house, a tavern, or indeed anywhere other than a confinement facility, it is indisputable that the prosecution could have properly shown the jury where the meeting occurred and the plans were formulated. The site of such discussions is an integral part of the chronicle of the crimes, and a fact finder would reason-

ably expect Palmer's testimony to identify the place where the alleged conferences transpired. The issue, then, is whether the state, in circumstances such as those here, is compelled to conceal that information from the jury merely because the felonious enterprise was planned in jail.

Pertinent to that question, it should be noted that Palmer, in the jury's presence, admitted convictions for possession of a stolen pistol, possession of stolen tools, and stealing electricity. He also acknowledged giving authorities information about some 109 to 112 burglaries, and he disclosed he was testifying for the state pursuant to a "deal" in which he was to receive "five years probation and no jail time."

As Palmer supplied the only evidence connecting appellant with the crimes, it is obvious that the state's case hinged completely on whether the jury believed Palmer, a tenuous prospect in view of Palmer's criminal history and his bargained-for testimony. Had Palmer, when telling the jury of the burglary plans, failed to disclose where they were made, the jury, given the several factors denigrating his credibility, could well have rejected his entire testimony as a fabrication to gain favorable treatment by the authorities. It was thus imperative—from the state's point of view— that the jury have the complete story as to how the burglaries came about.

It is also noteworthy that the state made no attempt to show *why* appellant was in jail at the time he and Palmer made the burglary plans. All Palmer revealed was that he and appellant became acquainted there and agreed to form a burglary team. Consequently, there was no indication whatever as to the crime that had brought about appellant's incarceration.

In *State v. Nolan,* 717 S.W.2d 573 (Mo. App.1986), the accused was charged with sexual abuse in the first degree. His confession was a major component of the state's case. The confession was obtained when a Division of Family Services caseworker received a report about sexual abuse of children other than the victim. In the investigation of that matter the accused's name surfaced. The caseworker

and a deputy sheriff confronted the accused, whereupon he admitted sexually abusing the victim. Rejecting the accused's argument that the evidence regarding his suspected abuse of other children was inadmissible because it was proof of other crimes, the appellate court held the testimony relevant and admissible as it established how the caseworker became involved in the investigation that led to the confession. *Id.* at 575–76.

In *State v. Franks,* 685 S.W.2d 845 (Mo. App.1984), the accused was charged with burglary in the second degree and stealing. The state's evidence included excerpts from a transcript of the testimony of the accused's accomplice at the accused's preliminary hearing. In that testimony the accomplice recounted that prior to committing the crimes charged, he and the accused had gone to another house intending to "hit a safe and get some jewelry plus the guns." That venture was abandoned when the duo discovered the owners were home. Shortly thereafter the culprits committed the subject crimes. The appellate court rejected the accused's argument that the admission of the evidence of the aborted crime was reversible error. The appellate court agreed with the trial court's ruling that the evidence was probative of intent. Moreover, said the appellate court: "The evidence also was necessary to establish a complete and coherent picture of the events leading to the commission of the crimes." *Id.* at 849[12].

In *State v. Perkins,* 680 S.W.2d 331 (Mo. App.1984), the accused was captured by two homeowners while he was burglarizing their home. The accused beseeched his captors not to call the police, saying, "There [sic] just going to send me back." On appeal the accused maintained the trial court erred in allowing the statement in evidence, as it showed the accused had been in the penitentiary. The appellate court upheld the conviction, ruling that the statement was admissible not only to show intent and absence of mistake or accident, but also under an exception sometimes referred to as the "complete story exception," as the statement assisted the jury in

putting other evidence in context. *Id.* at 334[5].

In *State v. Smith*, 708 S.W.2d 292 (Mo. App.1986), the accused was convicted of burglary. On appeal he claimed manifest injustice occurred when a police officer testified the accused, upon being stopped immediately after the crime, said he had just returned from the penitentiary and was not going back. The appellate court found no plain error. *Id.* at 293[2].

Other cases have reached similar results applying a principle characterized as the "parallel exception" to the rule barring evidence of other crimes. That exception permits proof of another crime if such crime is so linked together in point of time and circumstances with the crime charged that one cannot be fully shown without proving the other. *State v. Weatherspoon*, 728 S.W.2d 267, 272–73[3] (Mo.App.1987); *State v. King*, 588 S.W.2d 147, 150[6] (Mo. App.1979). Under this exception the state is permitted to paint a complete and coherent picture of the crime charged and it is not required to sift and separate the evidence tending to prove the crime for which the accused is not on trial. *Weatherspoon*, 728 S.W.2d at 273; *King*, 588 S.W.2d at 150. *Cf. State v. Robb*, 439 S.W.2d 510, 514[7] (Mo.1969); *State v. Sinovich*, 329 Mo. 909, 46 S.W.2d 877, 880[11] (1931).

In the instant case, in order to present an unabridged account of the crimes on trial, and to paint a complete and coherent picture of them, it was necessary that the evidence include the setting and circumstances in which appellant and Palmer became acquainted and planned the burglarious enterprise. Bearing in mind that the state bore the burden of proving appellant's guilt beyond a reasonable doubt, *State v. Tolliver*, 562 S.W.2d 714, 720[19] (Mo.App.1978), and that the only evidence identifying appellant as a participant in the crimes was Palmer's testimony, we cannot say that the probative value of the evidence that Palmer and appellant met in jail and agreed there to commit burglaries in partnership was outweighed by its prejudicial effect. Appellant's first point is denied.

Appellant's second point avers the trial court erred in allowing counts I and II to be joined in the same information with counts III, IV and V, and then abused its discretion in failing to sever counts I and II from counts III, IV and V for trial. Appellant maintains counts I and II were not of the same or similar character as counts III, IV and V, were not based on the same act or transaction, and did not constitute parts of a common scheme or plan. Consequently, says appellant, joinder was not authorized by § 545.140.2, RSMo 1986, and Rule 23.05, Missouri Rules of Criminal Procedure.

Section 545.140.2 was enacted in its existing form in 1984. H.C.S.S.C.S.S.B. 602, Laws 1984, pp. 746–48. It provides:

"Notwithstanding Missouri supreme court rule 24.07, two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or infractions, or any combination thereof, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan."

Rule 23.05, Missouri Rules of Criminal Procedure, was amended effective July 1, 1986. Rule 23.05, Missouri Rules of Court (18th ed. 1987), p. 123. The amended version, which was in effect at the time of the filing of the information in the instant case,[1] provides:

"All offenses that are of the same or similar character or based on two or more acts that are part of the same transaction or on two or more acts or transactions that are connected or that constitute parts of a common scheme or plan may be charged in the same indictment or information in separate counts."

▇ The above-quoted statute and rule pertain to the *joinder* of offenses in a single information; they do not address the subject of *severance* of properly joined offenses for trial. The two issues must not

---

1. Appellant was tried on a first amended infor-

mation filed December 15, 1986.

be confused. The first presents the question of what offenses may be charged in one information; the second assumes proper joinder and presents the question of whether the trial court abused its discretion in refusing to order the offenses tried separately. *State v. Harris,* 705 S.W.2d 544, 547 (Mo.App.1986). Joinder is either proper or improper under the law, while severance is discretionary. *Id.; State v. Smith,* 682 S.W.2d 861, 863[1] (Mo.App. 1984).

We shall consider the joinder issue first.

As explained in *Harris,* 705 S.W.2d at 547, prior to August 13, 1984, the effective date of the existing version of § 545.140.2, quoted *supra,* the only authority allowing the state to charge more than one offense in a single information was Rule 23.05. We pointed out earlier that the current version of Rule 23.05, quoted *supra,* took effect July 1, 1986. Rule 23.05, as it existed prior to that date, is set forth below.[2]

· *Harris,* 705 S.W.2d at 547, teaches that the current version of § 545.140.2 makes possible the joinder of offenses "of the same or similar character," which had not been permissible under Rule 23.05 prior to its 1986 amendment. In *Harris* the accused was charged with, and convicted of, three counts of robbery in the first degree, one count of attempted robbery in the first degree, one count of assault in the first degree, and one count of armed criminal action. The charges arose from three separate incidents, each of which took place at night. The first occurred when the occupant of an automobile parked outside a restaurant was accosted by three men, one of whom brandished a gun and ordered the occupant out of the vehicle. The occupant complied, whereupon the trio entered the car and drove away. The second incident occurred 18 days later while the driver of an automobile was waiting in the drive-through line to pick up a food order at a restaurant. Two armed men approached the vehicle. One demanded the driver's money and her necklace, then shot her as she was removing the necklace. The third incident occurred four days later when a man and a woman were leaving a lounge. As they approached the man's automobile they noticed two men near it. One of the men pointed a gun at the couple and announced a holdup; the other approached and began frisking them, taking valuables. The incident ended when a police vehicle passed nearby and the culprits fled.

In a comprehensive analysis of cases from other jurisdictions construing rules allowing joinder of offenses "of the same or similar character," the appellate court in *Harris* approved the joinder there, holding that inasmuch as the offenses involved a similar tactic on the part of the assailants to approach people, late at night, at gunpoint, while the victims were at their automobiles near a public dining place, so as to rob them and escape, the offenses were of the same or similar character. *Id.* at 550. That being so, it was immaterial whether all of the offenses constituted parts of a common scheme or plan. *Id.* at 548.

■ In determining whether the offenses in the instant case were of the same or similar character, we note that the crimes committed on each of the three occasions in question were the same, burglary and stealing. A charge of burglary in the second degree was filed with respect to each of the three incidents, and a charge of stealing property of the value of $150 or more was filed with respect to the Spirit Originals incident and the Wright incident. No stealing charge was filed regarding the Barton incident, evidently because the monetary value of the items stolen was relatively small. Not only were the crimes the same, the manner in which each was committed was the same. Each was committed (1) at night, (2) while the target premises were unoccupied, (3) when appellant was accompanied by Palmer, and (4) by using a screwdriver to gain entry. Jewelry was an objective at each break-in, and after each,

---

**2.** Rule 23.05, Missouri Rules of Criminal Procedure (16th ed. 1985), provided:

"All offenses that are based on the same act or on two or more acts that are part of the same transaction or on two or more acts that constitute parts of a common scheme or plan may be charged in the same indictment or information in separate counts."

appellant and Palmer divided the plunder pursuant to the "partnership."

Appellant maintains that the Spirit Originals burglary was not of the same or similar character as the Barton and Wright burglaries, in that the former was a burglary of a commercial establishment while the latter two were burglaries of dwellings. Furthermore, says appellant, entry at Spirit Originals was gained through a skylight on the roof, while entry at the Barton and Wright homes was gained through a door and a window, respectively. Finally, appellant points out that the Barton and Wright burglaries occurred within 10 days of each other, while the Spirit Originals burglary took place six months later.

Section 545.140.2 does not require that offenses be identical in every detail in order to be joined in the same information. It is sufficient if they be of the same or similar character. The offenses in the instant case were at least as similar to each other as were the offenses in *Harris*, 705 S.W.2d 544. The similarities between the offenses in the instant case also compare favorably with the similarities between the offenses in *State v. Smith*, 735 S.W.2d 41 (Mo.App.1987), where joinder was upheld under the "same or similar character" clause of § 545.140.2. In *Smith*, discussed more fully *infra*, a conviction of two counts of first degree robbery, two counts of armed criminal action, and one count of second degree murder, arising from three separate incidents, was affirmed.

The similarities between the offenses in the instant case were also equal to, if not greater than, those in *State v. Clark*, 729 S.W.2d 579 (Mo.App.1987). There an intruder forced his way into an apartment at gunpoint, robbed six persons, and raped, sodomized and sexually abused a woman. Thirteen days later an intruder forced his way into an automobile and robbed, raped and sodomized the woman driver. The accused was charged with six counts of first degree robbery, one count of forcible rape, one count of forcible sodomy, one count of first degree burglary, one count of first degree sexual abuse, and one count of armed criminal action regarding the first inci-

dent; he was charged with four counts (inferably rape, robbery, and two counts of sodomy) regarding the second incident. The appellate court, holding that similar tactics are sufficient to constitute offenses "of the same or similar character" under § 545.140.2, *id.* at 582[6], ruled that joinder of the offenses in one information was proper. *Id.* at 582[8]. The opinion, while acknowledging there were some dissimilarities between the two incidents, nonetheless determined that the similarities in the tactics employed in each incident, which the opinion specifically enumerated, were sufficient to authorize joinder. *Id.* at 582.

■ The fact that the Spirit Originals burglary occurred some six months after the other two does not defeat joinder under § 545.140.2. In *United States v. Rodgers*, 732 F.2d 625 (8th Cir.1984), joinder of two drug offenses that occurred 20 months apart was upheld under the federal joinder rule containing a "same or similar character" clause identical to § 545.140.2.

Applying *Harris*, 705 S.W.2d 544; *Smith*, 735 S.W.2d 41; and *Clark*, 729 S.W.2d 579, we hold that the trial court did not err in permitting counts I and II to be joined in the same information with counts III, IV and V. The first component of appellant's second point is denied.

The second component of appellant's second point is that even if joinder of all five counts in one information was proper, the trial court abused its discretion in failing to sever counts I and II from counts III, IV and V for trial. This contention involves a different statute and a different rule than those which governed the first component.

The statute pertinent to the second component is § 545.885, RSMo 1986. That section was enacted in its existing form in 1984. H.C.S.S.C.S.S.B. 602, Laws 1984, pp. 746–48. It provides, in pertinent part:

"1. Notwithstanding Missouri supreme court rule 24.07, whenever two or more offenses are jointly charged in an indictment or information, the court shall order both or all offenses to be tried together.

2. If it appears that a defendant or the state is substantially prejudiced by a

joinder of the offenses for trial, upon a written motion of the defendant or the state and upon a particularized showing of substantial prejudice, the court may grant a severance of offenses or provide whatever relief justice requires. For purposes of this section, 'substantial prejudice' shall mean a bias or discrimination against the defendant or the state which is actually existing or real and not one which is merely imaginary, illusionary or nominal.

...."

The pertinent rule is Rule 24.07, Missouri Rules of Criminal Procedure, which has been in its present form since an amendment effective July 1, 1986. Rule 24.07, Missouri Rules of Court (18th ed. 1987), p. 127. The present version, which was in effect at the time of appellant's trial,[3] provides:

"When a defendant is charged with more than one offense in the same indictment or information, the offenses shall be tried jointly unless the court orders an offense to be tried separately. An offense shall be ordered to be tried separately only if:

(a) A party files a written motion requesting a separate trial of the offense;

(b) A party makes a particularized showing of substantial prejudice if the offense is not tried separately; and

(c) The court finds the existence of a bias or discrimination against the party that requires a separate trial of the offense."

Appellant maintains he was prejudiced by being tried on all five counts at the same time. Had counts III, IV and V been tried separately from counts I and II, says appellant, the only possible justification for introducing evidence of the Spirit Originals break-in at the trial of counts III, IV and V would have been as evidence of a common scheme or plan. However, argues appellant, the offenses charged in counts III, IV and V were too dissimilar from the Spirit Originals break-in to establish a common scheme or plan. Therefore, according to appellant, evidence of the Spirit Originals

break-in would not have been admissible had counts III, IV and V been tried separately from counts I and II. Appellant complains that trying all five counts together enabled the prosecution to insinuate that because appellant "was guilty of the residential burglaries he was probably guilty of the Spirit Originals burglary." Citing *State v. Wood,* 613 S.W.2d 898 (Mo. App.1981), appellant insists that to avoid emasculation of the rule barring evidence of crimes other than the one for which an accused is on trial, the joinder rule must be construed so that joinder is permitted only where proof or evidence of the commission of one crime is necessary to the proof of the commission of the other.

We point out to appellant that *Wood* was decided prior to the 1984 amendment to § 545.885, and prior to the 1986 amendment to Rule 24.07. That is likewise true of the other Missouri cases relied on by appellant on the severance issue: *State v. Cook,* 673 S.W.2d 469 (Mo.App.1984); *State v. Howard,* 601 S.W.2d 308 (Mo.App.1980); and *State v. Buford,* 582 S.W.2d 298 (Mo. App.1979).

For guidance on the severance issue we look to *Harris,* 705 S.W.2d 544, discussed earlier in this opinion on the joinder issue. The court in *Harris* was confronted by a severance issue under the 1984 amendment to § 584.885. *Harris,* it will be recalled, is the case where the charges arose from three separate incidents, on different nights, in parking areas near restaurants. The accused in *Harris* maintained that the trial court erred in ordering all charges tried at the same trial, in that (a) he would be confounded in attempting to defend all the charges at one trial, (b) he intended to present an alibi defense to some charges but not others, (c) he intended to testify as to some charges but not others, and (d) the number of charges and complexity of the evidence would prevent the trier of fact from distinguishing the evidence and applying the law intelligently to each charge. The appellate court found such assertions insufficient to establish prejudice. *Id.* at

---

3. Appellant was tried December 17, 1986.

551. Nothing in *Harris* suggests that the crimes constituted parts of a common scheme or plan, and the opinion did not rely, either expressly or by implication, on the premise that evidence of the crimes committed during one of the incidents would have been admissible to prove any of the crimes committed during any of the other incidents had each incident been tried separately.

In *Clark*, 729 S.W.2d 579, discussed earlier in this opinion on the joinder issue, the court was confronted by a severance issue under the 1984 amendment to § 545.885. *Clark*, it will be remembered, is the case involving robberies and sex offenses at an apartment and, 13 days afterward, robbery and sex offenses in an automobile. The accused complained on appeal that the trial court erred in refusing to sever the offenses. Rejecting the complaint, the opinion in *Clark* stated that in assessing the prejudice involved in trying multiple charges together, a trial court should consider, among other relevant factors, the number of offenses charged, the complexity of the evidence to be offered, and whether the trier of fact is able to distinguish the evidence and apply the law intelligently to each offense. *Id.*, at 583. As the evidence in *Clark* was not complex, the elements of each offense were clearly set out in the instructions, the jury was admonished to consider each offense separately, and nothing in the record indicated the jury was unable to distinguish the evidence or properly apply the law to each offense, the accused failed to demonstrate prejudice. *Id.* As in *Harris*, nothing in *Clark* indicates that the appellate court, in approving the denial of severance, did so on the basis that evidence of the crimes committed in the apartment would have been admissible to prove the crimes in the automobile (or vice versa), had the two incidents been tried separately.

In *State v. Luke*, 729 S.W.2d 584 (Mo. App.1987), the accused was charged with stealing items of personal property from an automobile and burglarizing a residence a few blocks away some two hours later. The charges were tried together; the accused was convicted of both. Rejecting his argument that the trial court should have severed the charges per the 1984 amendment to § 545.885, the appellate court held that the accused did not make a particularized showing of substantial prejudice so as to require a severance under paragraph 2 of § 545.885. *Id.* at 585.

In *Smith*, 735 S.W.2d 41, mentioned earlier in this opinion on the joinder issue, the court was confronted by a severance issue under the 1984 amendment to § 545.885. In *Smith*, the evidence showed the accused used a gun to rob a restaurant, used a gun to rob a convenience store in the same block, and the next night used a gun to rob a liquor store, killing the store manager. At a single trial he was convicted of first degree robbery and armed criminal action in regard to each of the first two incidents, and second degree murder in regard to the third. On appeal he complained that the trial court erred in failing to grant separate trials for the various crimes, in that the evidence linking him to the restaurant and convenience store crimes was strong while the evidence linking him to the liquor store crime was weak. The opinion explained that an eyewitness at the convenience store identified the accused at trial; a surveillance camera at the same store photographed the accused during that incident and the photographs were introduced at trial. During the convenience store incident the accused fired two shots. The opinion pointed out that evidence of the convenience store incident would have been admissible to identify the accused as the gunman in the liquor store incident, as the bullet used to kill the liquor store manager was shown to have been fired from the same gun as the bullets fired in the convenience store. Thus, there was no undue prejudice to the accused in trying the convenience store charges with the liquor store charge. Pertinent to the severance issue before us in the instant case, the opinion in *Smith* went on to hold that there was no abuse of discretion in trying the restaurant offenses with the convenience store and liquor store offenses, as the number of offenses was relatively few, the evidence offered was not complex, and

there was no reason to believe the jury could not distinguish the evidence and legal principles applicable to each offense. *Id.* at 45[8]. It is significant that the opinion in *Smith* did not justify the denial of severance of the restaurant offenses from the other offenses on the ground that evidence of the restaurant offenses would have been admissible to prove the other offenses had severance been ordered.

Appellant's theory in the instant case that he was prejudiced by the denial of his motion for severance in that evidence of the Spirit Originals break-in was presented at his trial when such evidence would not have been admissible at a trial of counts III, IV and V had those counts been tried separately from counts I and II, is directly answered by *United States v. Werner*, 620 F.2d 922 (2d Cir.1980). There the accused argued on appeal that the trial court should have severed four of the charges against him from the remaining two per Rule 14, Federal Rules of Criminal Procedure, which provides, in pertinent part: "If it appears that a defendant ... is prejudiced by a joinder of offenses ... in an ... information or by such joinder for trial together, the court may order ... separate trials of counts...."

Rejecting the argument, the opinion in *Werner* explained that it is insufficient for an accused complaining about the denial of a severance to show merely that he would have had a better chance for acquittal at a separate trial. *Id.* at 928. Granting a severance simply on a showing of the adverse effect of being tried for two crimes rather than one would undermine the federal rule allowing joinder of offenses "of the same or similar character," and essentially wipe that rule from the books. *Id.* at 929. The opinion added that the mere fact that juries are apt to regard with a more jaundiced eye a person charged with two crimes than a person charged with one does not call for severance. *Id.* While trial courts must be alert to the danger that a jury may use the cumulative evidence of all crimes to convict an accused of a particular crime where the evidence of that crime alone is insufficient, that danger disappears when the accused's conduct on several separate occasions can properly be examined in detail, and the only consideration is whether the trial as a whole may not become too confused for the jury. *Id.*

■ If, in the instant case, we continued to adhere to the rule that severance, if requested, is mandatory any time evidence of one crime would not be admissible as proof of another crime if the two were tried separately, we would effectively emasculate the 1984 amendments to §§ 545.140 and 545.885. Bearing in mind that an accused has neither a federal nor state constitutional right to be tried on only one offense at a time, *State v. Baker*, 524 S.W.2d 122, 126[3] (Mo. banc 1975), that appellant does not attack the constitutionality of either § 545.140 or § 545.885, and that appellant's only asserted ground for severance was that evidence of the Spirit Originals break-in would not have been admissible at a trial of counts III, IV and V had those counts been tried separately from counts I and II, we hold that the trial court did not abuse its discretion in denying appellant's motion for severance. The second component of appellant's second point is denied.

In his third point appellant, a black man, avers that the trial court erred in proceeding with the trial after the prosecutor used one of the state's six peremptory challenges, § 546.180.1(2), RSMo 1986, against a black member of the venire, Sharon Ann England. During voir dire the following colloquy occurred between the prosecutor and Ms. England:

"[Prosecutor]: Does anyone know the defendant?

Venireman England: I do.

[Prosecutor]: What's your name?

Venireman England: Sharon England.

[Prosecutor]: How do you know the defendant?

Venireman England: Well, I just know him through his mother.

[Prosecutor]: His mother is going to be a witness here at this trial today. How well do you know his mother?

Venireman England: I know her pretty well. I used—We used to work together.

[Prosecutor]: Do you think that will prejudice your decision here today, since his mother is going to testify, in one way or the other?

Venireman England: No.

[Prosecutor]: You say you all worked together. How closely did you all work together? In the same office or what?

Venireman England: We don't work together any more. We used to work together in the same factory.

[Prosecutor]: How long have you known her?

Venireman England: Long time."

Twenty-four veniremen were qualified as potential jurors. Ms. England's name was the twenty-first on the list. The prosecutor used the state's six peremptory challenges to strike the final six names (veniremen 19 through 24). Nothing in the record suggests that any of the other five veniremen peremptorily struck by the prosecutor were black, and appellant lodges no protest about the striking of any venireman except Ms. England.

After each party had exercised its peremptory challenges, but prior to the time the 12 remaining veniremen were seated as the jury, appellant's attorney moved the trial court to bar the state from peremptorily challenging Ms. England, as such action violated appellant's "rights of equal protection under the 5th and 14th Amendments of the United States Constitution where it puts him on trial before a Jury from which members of his own race have been purposely excluded."

The prosecutor replied there was no showing that the state had intentionally discriminated against appellant or Ms. England because of race, as the state had struck the last six veniremen on the list and Ms. England "happened to be in that six." Furthermore, said the prosecutor, Ms. England stated she had known appellant's mother many years and had worked with her, and appellant's mother was going to be called as a defense witness.

The trial court found there was no reason to believe that the prosecutor intentionally, knowingly or with any malicious intent struck Ms. England for the purpose of excluding a member of a racial group or minority from the jury panel. The trial court accordingly denied appellant's motion.

Appellant, citing *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), insists that the record demonstrates a prima facie case of racial discrimination by the prosecutor in using a peremptory challenge against Ms. England, and the prosecutor did not rebut the presumption of discrimination by coming forward with a neutral explanation for striking her.

*Batson* was applied by the Supreme Court of Missouri in *State v. Antwine*, 743 S.W.2d 51 (Mo. banc 1987). *Antwine* interpreted *Batson* as leaving room for the state to exercise its peremptory challenges on the basis of the prosecutor's legitimate hunches and past experience, so long as racial discrimination is not the motive. *Antwine*, 743 S.W.2d at 65[16]. While *Batson* is not satisfied by "neutral explanations" which are no more than facially legitimate, reasonably specific and clear, the state's explanation for a peremptory challenge need not rise to the level of justifying exercise of a challenge for cause. *Antwine*, 743 S.W.2d at 65.

The standard of appellate review of a trial court's finding on an issue of racial discrimination in the state's exercise of peremptory challenges is set forth in *Antwine*. Such finding shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses. 743 S.W.2d at 66.

■ Applying the above principles to the record before us, we observe that no member of the venire except Ms. England knew appellant or his mother, thus there was no similarly situated white venireman who escaped peremptory challenge by the state. *Antwine*, 743 S.W.2d at 65. Furthermore, the state's case, as explained earlier, hinged solely on the credibility of Palmer, an admitted felon. Appellant's mother was the only defense witness; her testimony tended to provide an alibi for appellant. Consequently, the outcome of the trial de-

pended on whether the jury believed Palmer or appellant's mother. In such circumstances, the prosecutor was understandably uneasy about a longtime friend of appellant's mother serving on the jury. Indeed, a more compelling scenario for exercising a peremptory challenge without racial implications can scarcely be conceived.

Assuming, without deciding, that the record is sufficient to establish a prima facie case of racial discrimination in the prosecutor's exercise of a peremptory challenge against Ms. England, we hold that the prosecutor's explanation, which the trial court obviously believed, was sufficient to support the trial court's finding that racial discrimination was not the prosecutor's motive in striking Ms. England. It follows that the trial court's finding was not clearly erroneous, and thus cannot be disturbed on appeal. Appellant's third point is denied.

Appellant's fourth point asserts the trial court committed reversible error in allowing a police officer to testify from a police report as to the items Lacy Wright said were stolen from his home. The state, in its brief, concedes the testimony was inadmissible hearsay and was erroneously received over appellant's objection. However, says the state, the error does not compel reversal, as the officer's testimony was merely cumulative of Wright's testimony.

Appellant, citing *State v. Seever*, 733 S.W.2d 438 (Mo. banc 1987), argues that the officer's testimony gave the state an undue advantage by enabling the state to "bolster" Wright's testimony about the stolen items. *Seever*, however, did not present the same situation as the instant case. In *Seever* the prosecutor presented a videotaped statement of an eight-year-old sexual abuse victim per § 492.304, RSMo 1986, then placed the victim on the witness stand where she gave testimony corresponding to the videotape. On appeal, the accused argued that the procedure resulted in an improper enhancement and rehabilitation of the victim's testimony. Observing that there were sharply contested fact issues including the accused's total denial,

the Supreme Court of Missouri held the procedure constituted an impermissible duplication of the victim's testimony, amounting to a "bolstering" of her testimony. *Id.* at 441. Being unable to say there was no prejudice, the Supreme Court overturned the conviction.

■ Such circumstances do not exist here. There was no dispute about the Wright break-in or the items stolen. Wright testified fully on those subjects and appellant's counsel did not even cross-examine him. The sole issue was whether appellant was involved in the incident, and on that issue the verdict depended on whether the jury believed Palmer or appellant's mother. As Wright, the victim, supplied the principal testimony regarding the stolen items, and the officer's testimony was entirely cumulative, the error was harmless and affords no basis for reversal. *State v. Fletcher*, 619 S.W.2d 57, 60[5] (Mo. banc 1981). Admission of objectionable hearsay evidence will not constitute reversible error if, as a matter of law, it can be concluded that such hearsay is merely cumulative to other evidence fully proving the issue. *Id.* Appellant's fourth point is denied.

Appellant's final point assigns error in the trial court's denial of appellant's challenge for cause against venireman Robert Armes. During voir dire appellant's counsel asked whether any member of the venire had any business with the prosecuting attorney or his assistants within the preceding six months. Armes responded that the assistant prosecutor appearing for the state "had a real estate transaction ... about six months ago ... [i]t was a leasing transaction." Asked whether that would affect his ability to sit as a juror and judge the evidence coming from the witness stand, Armes replied, "No, sir."

Appellant's counsel challenged Armes for cause. The assistant prosecutor stated: "Your Honor, at the time that business was transacted I was not a Prosecuting Attorney. I did not work for the State. I was a private attorney.... [Armes'] testimony also was that that in no way would affect

his deliberation and judgment in this case today."

The trial court denied the challenge. Appellant thereafter used a peremptory challenge to strike Armes.

Appellant insists that Armes' disclosure that he had transacted business with the assistant prosecutor six months prior to trial indicated an inability to sit as a fair and impartial juror. Appellant complains that no inquiry was made into the type of business relationship between Armes and the assistant prosecutor, or the depth of such relationship. According to appellant, the relationship may have been so close that Armes could not have prevented being biased toward the state, despite his protestations to the contrary. The trial court, says appellant, should have erred on the side of caution and granted appellant's challenge of Armes for cause.

In determining the qualifications of a prospective juror, the trial court has very wide discretion, and its denial of a challenge for cause will not be disturbed on appeal unless it is clearly against the evidence and constitutes a clear abuse of discretion. *State v. Hopkins*, 687 S.W.2d 188, 189 (Mo. banc 1985). In the instant case, Armes' statements did not establish that he had been a client of the prosecutor, but only that they had had a "leasing transaction" some six months before trial. The positions each occupied in that transaction were not defined. Appellant's counsel had ample opportunity to develop such information but did not do so. It is possible that the prosecutor represented Armes; it is also possible that the prosecutor represented a party with whom Armes was dealing, and it is equally possible that the prosecutor was himself a party to the transaction and Armes was the other party. The only definite answer from Armes was that the transaction would not affect his ability to sit as a juror and judge the evidence from the witness stand.

In *State v. Grant*, 394 S.W.2d 285 (Mo. 1965), the trial court denied the accused's challenge for cause against a venireman who had known the prosecuting attorney all his life. The prosecuting attorney rep-resented the venireman in any legal matters the latter might have. Upholding the trial court's action, the Supreme Court of Missouri held that in the absence of a statute specifically so providing, a venireman is not absolutely disqualified because he is a client of the attorney for one of the parties. *Id.* at 289[8]. Emphasizing that the venireman stated his relationship with the prosecutor would not affect his decision in the case and that he would not be embarrassed to sit as a juror if he felt under the law and the evidence the accused was entitled to a verdict, the Supreme Court held the trial court did not abuse its discretion in denying the challenge. *Id.* at 289[9].

There is a statute, § 495.150, RSMo 1986, which pertains to veniremen who have been clients of an attorney involved in the trial within six months preceding it, *Learned v. Godfrey*, 461 S.W.2d 5, 6–7 (Mo. banc 1970), but the statute applies only to certain classes of counties. § 495.040, RSMo 1986. Appellant was tried in Butler County, and he makes no contention that § 495.150 applies there. Even if it did, the record does not establish that Armes had ever been the prosecutor's client.

Given the discretion vested in the trial court and Armes' declaration that the leasing transaction would not affect his ability to judge the case on the evidence, we cannot say the trial court erred in denying appellant's challenge of Armes for cause. Appellant's final point is denied and the judgment is affirmed.

GREENE, P.J., and HOLSTEIN, J., concur.