**STATE of Missouri,
Plaintiff–Respondent,**

v.

**James MOORE, Defendant–Appellant.**

No. 52635.

Missouri Court of Appeals,
Eastern District,
Division One.

Dec. 22, 1987.

Motion for Rehearing and/or Transfer
Denied Jan. 26, 1988.

Application to Transfer Denied
March 15, 1988.

Sarah S. Pleban, Asst. Public Defender, Clayton, for defendant-appellant.

William L. Webster, Atty. Gen., Christopher M. Kehr, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

REINHARD, Judge.

Defendant appeals after his conviction by a jury of 16 counts: five counts of rape, two counts of sodomy, two counts of first degree robbery, one count of second degree robbery, four counts of first degree burglary, one count of second degree burglary, and one count of attempted first degree burglary. He was found to be a prior offender, and the court sentenced him to a total of 240 years' imprisonment[1], sentences to be served consecutively to a sentence of 45 years imposed in cause number 851–02171 in the City of St. Louis. We affirm.

In his principal points on appeal, defendant contends the court erred in permitting joinder of all 16 counts and refusing to sever the counts as requested. The offenses charged in the 16 counts involved six victims on six different dates. Although his point does not so state, we perceive he is not objecting that all the individual counts were tried together, but only that the counts as to each incident involving one victim should not have been joined or should have been severed from those counts involving the other victims.

Defendant does not challenge the sufficiency of the evidence as to any count; therefore, we will relate only those facts pertinent to the issues raised. This case involved six victims, all of whom lived in close proximity in University City, Missouri. Each of the victims was a young woman, living by herself or with small children. In order to clarify the facts as they relate to the victims, we rely on a chart presented by the parties in their briefs

1. Defendant was sentenced as follows:
 Count I: burglary first degree (B felony), 15 years;
 Count II: rape, 15 years, consecutive to Count I;
 Count III: rape, 15 years, consecutive to Count II;
 Count IV: robbery first degree (A felony), 30 years, consecutive to Count III;
 Count V: burglary first degree (B felony), 15 years, consecutive to Count IV;
 Count VI: rape, 15 years, consecutive to Count V;
 Count VII: robbery second degree (B felony), 15 years, consecutive to Count VI;
 Count VIII: burglary first degree (B felony), 15 years, consecutive to Count VII;
 Count IX: sodomy, 15 years, consecutive to Count VIII;
 Count X: rape, 30 years, consecutive to Count IX;
 Count XI: robbery first degree (A felony), 5 years, concurrent to Count X;
 Count XII: attempted burglary first degree (C felony), 5 years, concurrent to Count XI;
 Count XIII: burglary second degree (C felony), 15 years, consecutive to Count XII;
 Count XIV: burglary first degree (B felony), 15 years, consecutive to Count XIII;
 Count XV: rape, 15 years, consecutive to Count XIV;
 Count XVI: sodomy, 15 years, consecutive to Count XV.

which sets forth the victim, the count, the offense, and the date of the offense:

| Victim | Count | Charge | Date |
|--------|-------|--------|------|
| V.L. | I | — Burglary 1st | 11–26–83 |
| | II | — Rape | |
| | III | — Rape | |
| | IV | — Robbery 1st degree | |
| M.P. | V | — Burglary 1st | 7–11–85 |
| | VI | — Rape | |
| | VII | — Robbery 2nd | |
| L.C. | VIII | — Burglary 1st | 5–15–85 |
| | IX | — Sodomy | |
| | X | — Rape | |
| | XI | — Robbery 1st | |
| E.H. | XII | — Attempt Burglary 1st | 6–21–84 |
| H.I. | XIII | — Burglary 2nd | 7–10–83 |
| V.S. | XIV | — Burglary 1st | 7–27–85 |
| | XV | — Rape | |
| | XVI | — Sodomy | |

A summary of the evidence as to each of these particular incidents follows. On November 26, 1983, V.L. was attacked at 1:45 a.m. in her apartment. She was awakened by a man unknown to her. The man tied her hands with a pink string from her house coat and covered her head. After threatening to kill her if she did not cooperate, the man cut the victim's bra with a knife and then raped and sodomized her. Next, the intruder rummaged through the house and raped her a second time. Before he left through the window, the man took some valuables from V.L. The police found fingerprints matching defendant's in the interior of the victim's apartment.

M.P. was awakened at about 5:00 a.m. on July 11, 1985, in her home when she was grabbed from behind by the neck. The man tied her hands with a pair of pants and tied her feet with a belt. He also put a pillow slip over her head. When she struggled, the man threatened to kill her if she did not cooperate. He raped her and stole $13 from her. After rummaging through the apartment, the attacker left through the window. The police found a palm print matching defendant's on a car parked outside the window which the intruder used to enter and exit the apartment.

On May 15, 1985, L.C. was at home with her children when she was attacked by an intruder. She had gone to bed about 10:00 p.m. and was awakened when a man put a pillow over her head. She struggled with him, but he threatened to kill her. During the struggle, her shoulder was dislocated. After struggling with the victim, the man tied her up with a belt from her dress. He covered her face with a quilt and raped and sodomized her. Then he robbed her and left.

On June 21, 1984, E.H. was awakened in the early morning hours in her home when she heard and saw a man outside her house holding up a window with both arms. She called the police, and the intruder fled. The police found a ladder outside the window. They also lifted fingerprints which matched defendant's from the outside portion of the same window.

H.I. returned to her home at approximately 1:30 a.m. on July 12, 1983. After discovering that the door was ajar and hearing a noise coming out of her child's room, she immediately obtained a gun from inside her house and went to the window where it appeared the intruder had entered and left. While nothing appeared to be missing from the apartment, drawers had been opened, clothes were scattered on the floor, and the window had been forced open. Officer Bowen lifted prints from the entry window which were identified as matching defendant's.

On July 27, 1985, V.S. was attacked in her home while her children were sleeping in the living room. She was awakened when a man put a hand over her mouth. The man promised not to hurt her or her children if she remained quiet. Because she feared for her and her children's lives, she did not struggle. The attacker tied her hands with a curling iron cord, covered her face, and turned off the light. The man committed an act of oral sex and raped her. Next, the attacker rummaged through the apartment. Before leaving, he threatened to kill her and her children if she called the police. He left through the window. The police found a missing screen from her apartment in a near-by creek with fingerprints matching defendant's on it. In addition, the police matched fingerprints found on the window which the attacker used to enter and exit the apartment with defendant's.

 Under the law, joinder of offenses is either proper or improper, but severance is a matter of discretion for the trial court.

*State v. Clark*, 729 S.W.2d 579, 581 (Mo. App.1987). Offenses should be liberally joined to encourage judicial economy, and the trial court's decision should be based solely on the state's evidence. *State v. Southern*, 724 S.W.2d 605, 607–08 (Mo. App.1986). Joinder of offenses is governed by Rule 23.05 which provides,

All offenses that are of the same or similar character or based on two or more acts that are part of the same transaction or on two or more acts or transactions that are connected or that constitute parts of a common scheme or plan may be charged in the same indictment or information in separate counts.[2]

Similar tactics are sufficient to constitute acts of the same or similar character. The acts should be similar enough to make it likely the same person executed each act. *Clark*, 729 S.W.2d at 581.

Here, the acts committed against V.L., M.P., L.C., and V.S. are clearly of the "same or similar character." The following facts recurred in each incident: defendant entered and exited through the window of the victim's home in University City; the attack occurred during the early morning hours; each victim was a woman in her mid-thirties and was living alone or with her children; defendant threatened to kill each victim or the victim's children; he tied up the victim with material found in the victim's home; defendant covered the victim's face and sexually assaulted her; and, when available, he took money from the victim and roamed through the victim's home. The facts demonstrate that the charged offenses are of the "same or similar character."

Defendant also contends that the charges arising from the invasion of E.H.'s and H.I.'s homes were improperly joined with the other charges. He argues that because the charges against E.H. and H.I. were property crimes, attempted first degree burglary and second degree burglary, and the other four incidents were primarily crimes against the person, they are not of the "same or similar character." We find this argument without merit.

Even though some of the charges stem from property crimes and other charges stem from crimes against the person, similar facts exist between the incidents, and the evidence submitted for each charge was similar. First, as with the attacks against V.L., M.P., L.C., and V.S., the crimes committed against E.H. and H.I. occurred at their homes in University City, the crimes occurred in the early part of the morning, the victims were women in their mid-thirties, and the assailant entered or attempted to enter through the window.

Additionally, in the offenses against H.I. and E.H., finger or hand prints matching defendant's were found, as in the other incidents, except in the incident involving L.C.

█ Identical tactics are not required for proper joinder. Tactics which resemble or correspond in nature are sufficient. *Clark*, 729 S.W.2d at 582. Although in the two property incidents the assailant did not rape H.I. and E.H., that fact is not in itself enough, when all the other factors are considered, to defeat joinder. The similarities in all the incidents were sufficient to put the assailant's signature on them. We hold that joinder was proper.

Defendant next alleges that the trial court abused its discretion by denying his motion to sever. He argues he suffered prejudice by being tried for all 16 counts at one trial.

Where the charges against a defendant have been properly joined, a denial of a motion to sever will be set aside only if defendant can show an abuse of discretion. *Clark*, 729 S.W.2d at 582. Under Rule 24.07(b), defendant's motion to sever should be denied, unless he "makes *a particularized showing of substantial prejudice* if the offense is not tried separately" (emphasis added). Substantial prejudice is defined at § 545.855.2, RSMo 1986, as "*a bias or discrimination* against the defendant or the state which is *actually existing*

---

2. This rule was in effect on the date of trial, November 12, 1986. It became effective subsequent to the effective date of § 545.140.2, RSMo. 1986.

*or real* and not one which is merely imaginary, illusionary, or nominal" (emphasis added). In determining whether actual prejudice exists, the court must consider the number of offenses involved, the complexity of the evidence, and whether the jurors can realistically distinguish the evidence and apply the law intelligently. *Clark*, 729 S.W.2d at 583.

■ In this case there are 16 counts, but only six incidents. The facts relevant to each incident are not complex and are distinct. The state's evidence primarily consisted of testimony by the victims, the treating physicians, police, and fingerprint experts. Moreover, the trial judge correctly instructed the jury under MAI–CR2d 2.70 to consider the evidence of each offense separately. There is nothing in the record to indicate the inability of the jury to distinguish the evidence and apply the law to each offense.

Defendant also claims he was prejudiced by the denial of his motion to sever because the sentences he received were improperly enhanced. This argument lacks merit; the sentence for each count was proper. We have examined the record and conclude that the trial court did not abuse its discretion in denying defendant's motion to sever.

Defendant's final point assigns error to the trial court in overruling his objections to remarks made by the prosecutor in his opening statement and to testimony by one of the rape victims, a doctor, and a police officer concerning emotional trauma suffered by the victims as a result of sexual attacks. He contends these were inadmissible evidence of "rape trauma syndrome." Further, he argues the remarks and testimony were irrelevant and prejudicial.

Defendant first challenges comments made in the opening statement by the prosecutor, in which he described the victims as follows:

When she [one of the victims] saw the defendant in that lineup, and she'll tell you that she became quite faint and almost became ill ...

... all the victims of the sexual assaults had been spoken to by the police officers there, and, of course, immediately conveyed to the St. Louis County Hospital where they were treated for various injuries, both emotional and physical.

Again, I mentioned that some of the victims received emotional injury that is obvious some of them ...

Defendant's second complaint concerns the testimony of a treating physician about V.L.:

Q. [PROSECUTOR]: Doctor, from examining [V.L.], could you tell from just looking at her if she was upset?

A. Yes, she was. She was crying on several occasions during the medical examination and seemed to be upset.

He also objects to the following testimony of L.C., describing her feelings when viewing defendant in a pretrial lineup:

Q. [PROSECUTOR]: Did you immediately tell the officers that you thought Suspect No. 1 was your attacker?

A. I got sick and nauseated.

The prosecutor asked Officer Bowen about a victim's emotional state when she interviewed her, and she replied, "[s]he was extremely distraught and upset and very emotional about what occurred."

Defendant objects to these comments and testimony because they allegedly constituted evidence of "rape trauma syndrome." He relies on *State v. Taylor*, 663 S.W.2d 235 (Mo. banc 1984). We have reviewed the comments and testimony and conclude his contention is without merit.

In *Taylor*, the court held that expert testimony regarding rape trauma syndrome is not admissible to bolster the credibility of the victim to show that the victim was in fact raped. *Taylor*, 663 S.W.2d at 240. Also, the court found that the "term [rape trauma syndrome] itself connotes rape." *Id.* at 241.

■ This is not a rape trauma syndrome case. None of the complained of comments or testimony involved an invasion of the jury's province to determine the credibility of the victims. Further, consent was not an issue in this case, nor was the term "rape trauma syndrome" ever used; there-

fore, the matters objected to did not constitute the inadmissible evidence confronted in *Taylor*. *See State v. Horne*, 710 S.W.2d 310,312 (Mo.App.1986); *State v. Shaw*, 694 S.W.2d 857, 860 (Mo.App.1984). We find no error in the overruling of defendant's objections to the prosecutor's comments and to the admission of the testimony of the witnesses.

Turning to defendant's claim that the comments and testimony were irrelevant and prejudicial, we note that a decision on the relevancy of evidence is within the sound discretion of the trial court and will not be disturbed unless the defendant shows an abuse of discretion. *State v. Johnson*, 637 S.W.2d 157, 161 (Mo.App. 1982). We do not believe the court abused its discretion in this case, and, furthermore, we find no prejudice to defendant from allowing the comments and admitting the testimony.

Judgment affirmed.

GARY M. GAERTNER, P.J., and CRIST, J., concur.