**STATE of Missouri, Plaintiff–Respondent,**

v.

**Jerry R. CROCKETT, Defendant–Appellant.**

No. 57327.

Missouri Court of Appeals, Eastern District, Northern Division.

Nov. 20, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 19, 1990.

Sean J. O'Hagan, Clayton, for defendant-appellant.

William L. Webster, Atty. Gen., Stewart M. Freilich, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

PER CURIAM.

Defendant appeals his conviction by a jury of one count of possession and two counts of sale of cocaine. The court sentenced defendant to seven years for possession, and fifteen years for each sale, to be served consecutively. We affirm.

On December 23, 1988, the defendant met with Jeff Toalson and Thomas Schrader. The three went to defendant's apartment, which defendant kept for the purpose of dealing drugs. Toalson and Schrader agreed to purchase $200 and $50 of cocaine, respectively. Defendant produced cocaine from a Pennzoil can on the refrigerator and began to weigh it on a set of scales, while Toalson folded papers to

transport the cocaine and Schrader removed money from his wallet to pay for the cocaine. By authority of a warrant, the police entered the apartment with a key obtained from the landlord. The police found the defendant sitting at the table with the cocaine, Toalson folding the papers and Schrader holding the money. A search of the apartment produced 5.32 grams of cocaine inside of the Pennzoil can, and a large amount of unprocessed cocaine between mattresses in the bedroom. Cocaine was found on the table, in a vial, in a grinder, in a funnel, and in a folded piece of paper on the kitchen table. Toalson, Schrader, and defendant were arrested. Toalson and Schrader agreed to testify against the defendant in return for lenient treatment. Before trial, defendant attempted to suppress all evidence gained by entry into the apartment on the grounds that the warrant was defective. Defendant also attempted to limit testimony by Toalson and Schrader concerning other narcotics transactions involving defendant. The trial court denied the motions, and defendant was convicted by a jury.

In his principal point defendant claims that:

> "[t]he trial court erred in overruling appellant's motion to suppress physical evidence and statements, based upon the fact that the Affidavit In Support Of The Search Warrant was vague and unreliable on its face, combined with the fact that the issuing judge had, previous to the date of the application for search warrant, expressed a prejudicial opinion concerning the appellant, which related specifically to the issue addressed in the application for the search warrant."

In his affidavit for the search warrant, the first deputy stated as follows:

> "I am an Audrain County Deputy Sheriff and have been for ten years. I am familiar with Jerry Crockett and I know that he has a reputation for dealing in cocaine. I know that he has an apartment upstairs at 314 East Monroe in Mexico, MO. I have had reliable information for more than the last year that Jerry Crockett is selling cocaine in local taverns here in Mexico. On November 23, 1988, a law enforcement undercover agent told me the agent was in Crockett's apartment at 314 East Monroe here in Mexico, MO and Crockett said to the undercover agent that this is where Crockett brings his clients to do drugs, and that Crockett does only cocaine in the apartment. The undercover agent told me that Crockett got some cocaine from the kitchen area of the apartment and laid out some lines of cocaine on the kitchen table, and offered some drugs to the under cover [sic] agent. The agent told me the agent attempted to buy some cocaine from Crockett, but the agent did not have enough money to make Crockett's minimum sale of one gram.

> Tonight I and other members of the Audrain County Sheriff's department have had the apartment at 314 East Monroe under surveillance, and because of the number of persons going into the apartment I believe that Jerry Crockett is now in the apartment, and that cocaine is now being used, and if a search warrant is issued that cocaine will be found in the apartment."

■ Defendant claims that there was no verifiable information from any reliable source which indicated that defendant possessed controlled substances on the date of the search, other than indications that an undercover agent saw narcotics in the apartment on November 23, 1988. The main thrust of defendant's complaint is that the information supplied by the informant is too stale to be considered by the issuing judge. "The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *State v. Moiser*, 738 S.W.2d 549, 557 (Mo. App.1987) (quoting *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). The duty of the reviewing court is simply to insure that there was a substantial basis for the issuing judge to conclude

that probable cause existed. *Id.* The issuing court's determination as to what facts and circumstances constitute probable cause is accorded great deference by the reviewing court. *Id.*

■ We cannot say that the affidavit presented to the judge did not establish a fair probability that contraband would be found in Crockett's apartment. *See, State v. Hall,* 687 S.W.2d 924 (Mo.App.1985). This result is not affected by the testimony of the Circuit Clerk that the issuing judge had told her that in his opinion Jerry Crockett was a known drug dealer. This statement was made sometime prior to the issuance of the warrant and at a time when she was discussing with him the possible appointment of Crockett's wife as the Chief Deputy Clerk. The prosecutor did not present any evidence to rebut the testimony of the Circuit Clerk as to the judge's statement. The trial court can disbelieve the evidence presented, even if uncontradicted. *Mansfield v. State,* 625 S.W.2d 214, 215 (Mo.App.1981). In any event, it is presumed that a judge will not involve himself in a proceeding in which he cannot be impartial. *See State v. Hoeber,* 737 S.W.2d 484, 486 (Mo.App.1987). Familiarity or contacts with the defendant do not necessitate disqualification. *Molasky v. State,* 710 S.W.2d 875, 879 (Mo.App.1986). The record fully supports the trial court's denial of defendant's Motion To Suppress.

■ Defendant also claims that the state did not make a submissible case of the sales of cocaine because it failed to provide evidence that "something changed hands." This is not a requirement of the statute. Section 195.020, RSMo 1986, under which defendant was charged, makes it unlawful to sell a controlled substance. Sale is defined by § 195.010(37) to include "barter, exchange, or gift, *or offer therefor....*" § 195.010(37), RSMo Cum.Supp.1989. (Emphasis added). The proscribed conduct includes an offer to transfer the controlled substance as well as a sale in the normal sense. It is not necessary that the elements of commercial sale, i.e., fixed price, delivery and payment, be present in order to constitute a sale. *State v. Crumbaker,* 753 S.W.2d 76, 78 (Mo.App.1988). In reviewing a challenge to the sufficiency of the evidence we accept as true all evidence tending to prove defendant guilty together with all reasonable inferences which support the verdict, and ignore all contrary evidence and inferences. *State v. Rousan,* 752 S.W.2d 388, 389 (Mo.App.1988).

■ Toalson and Schrader testified that they were with the defendant at a tavern. Toalson and defendant agreed to the purchase by Toalson of two grams of cocaine on credit. The price was to be $200. Schrader and defendant agreed to a purchase of ½ of a gram for $50. The three went to defendant's apartment in his car to get the cocaine. Defendant took some cocaine out of a Pennzoil can on top of the refrigerator and weighed it on a set of scales. Defendant next laid the cocaine on the table while Toalson folded papers at the table for the purpose of holding the cocaine, and Schrader got money out of his pocket to pay for the cocaine.

When the police entered the apartment they observed the defendant sitting at the kitchen table with cocaine in front of him. Toalson was sitting at the kitchen table folding some white paper and Schrader was sitting on a step leaning toward the kitchen table with a bill rolled up in his hand which was extended in defendant's direction.

When searched, defendant had "a little over $1,000 on him." Approximately 68 grams of cocaine were found in the apartment which was rented to defendant. In addition to permitting a search of the apartment, the search warrant also permitted a search of defendant's residence at the edge of town. When the officers asked him about drugs at his home he said he had nothing there, and that this is why he had the apartment. There is sufficient evidence here to support a conviction for the sale of cocaine as defined in § 195.010(37).

■ Defendant claims error in the introduction of testimony by Toalson claiming that the defendant sold him cocaine at 3:00 p.m. the day of the arrest, and that Toalson had been in the apartment prior to December 23, 1988 to purchase cocaine. Under

Missouri law, evidence of other crimes is admissible where it tends to establish, among other things, motive, intent, or common scheme or plan embracing the commission of two or more crimes so related that proof of one tends to establish the other. *State v. Chance,* 719 S.W.2d 108, 110 (Mo. App.1986). The testimony by Toalson about prior purchases tends to prove that defendant intended to sell the cocaine on December 24, 1988. The jury may infer that the defendant intended to sell the cocaine he had when arrested from the evidence that the defendant sold cocaine in the past. In addition, the fact that Toalson went to the apartment to purchase cocaine previously is evidence of a common scheme of sales from defendant's apartment and allows the jury to reasonably infer that the sale was occurring when the police arrived. This point has no merit.

■ Defendant claims the court erred in allowing the prosecutor to make allegedly prejudicial statements in his closing argument. The prosecutor asked the jury to "answer a mother's prayer" by convicting defendant, and referred to defendant as a "big drug dealer." Counsel for defendant made no objection; thus, his complaints as to these statements were not preserved for review. The trial court has broad discretion in controlling closing argument and the court's ruling on argument of counsel is reversible only for an abuse of discretion where the argument is plainly unwarranted. *State v. Cotton,* 724 S.W.2d 649, 651 (Mo.App.1986). We find no prejudice in the statements complained of.

■ Defendant also protests denial of his Motion For Mistrial because of the following argument by the prosecutor.

[PROSECUTOR]: Well, ladies and gentlemen, you remember what [venireperson] Matthews said, who sat right over here. He said that he would believe—

At this point defendant made an objection and the court sustained it. The state's reference to the statements of venireperson Matthews, while possibly an unwarranted attempt to personalize the prosecutor's remarks to the jury, was not prejudicial to the defendant. A mistrial should only be granted where no other remedy can prevent prejudice to the defendant. *State v. Keeven,* 728 S.W.2d 658, 663 (Mo.App. 1987). Defense attorney's objection prevented the prosecutor from completing his potentially harmful statement and the court directed the jury to disregard the comment. The trial court did not abuse its discretion in refusing to declare a mistrial.

Judgment affirmed.