**STATE of Missouri,
Plaintiff/Respondent,**

v.

**Terrance MAJOR, Defendant/Appellant.**

No. 58889.

Missouri Court of Appeals,
Eastern District,
Division One.

Sept. 24, 1991.

Lew A. Kollias, Stephan J. Harris, Columbia, for appellant.

William L. Webster, Atty. Gen., Joan F. Edwards, Asst. Atty. Gen., Jefferson City, for respondent.

REINHARD, Presiding Judge.

The defendant appeals after being convicted by a jury of four counts of the sale of marijuana and one count of the sale of amphetamines, § 195.020, RSMo 1986. He was sentenced by the court to two concurrent terms of ten years imprisonment for counts I and II of marijuana sales, to run consecutively with concurrent ten year terms for counts III and IV; he was sentenced to one concurrent fifteen year sentence for the amphetamines sale. We affirm.

On March 16, 1988, Vence H. Bumann, an undercover officer, purchased marijuana from the defendant in a trailer rented as a part of the undercover operation. After the purchase, Bumann gave the defendant the telephone number at the trailer. The defendant subsequently contacted Bumann by phone to arrange sales of marijuana three times within the next month. The dates of these sales were March 24, March 30, and April 11, and all of the sales but one occurred at the rented trailer. Additionally, the defendant contacted Bumann on April 20, 1988, and sold amphetamines to him at the trailer. Laboratory analysis indicated the substances from the first four sales were marijuana and the substance from the fifth sale was amphetamines. The tests conducted on the marijuana included a visual examination under a microscope and a chlorometric chemical test known as a modified Duquenois Levine test. The test conducted on the amphetamines was a mass spectrometry and gas chromatography technique. The defendant objected at trial to testimony regarding the identity of the substances on the ground of inadequate foundation.

In his first point, defendant contends the court erred in failing to grant his motion for judgment of acquittal or, in the alternative, motion for a new trial because the State's experts never testified "whether the system, method, procedure, etc., that they followed had been sufficiently established to have gained general acceptance in the particular field in which it belongs." Defendant relies on *State v. Onken*, 660 S.W.2d 312 (Mo.App.1983). In reversing that case, the court relied on *Frye v. United States*, 293 F. 1013, 1014 (D.C.Cir.1923) and stated:

This case must be reversed and appellant granted a new trial for the simple reason that nowhere in Grant's testimony was he asked about, or did he testify to the critical elements relative to the scientific tests and procedures he performed that were the basis of his conclusion.

Grant was never asked about, nor did he ever identify the system, method, procedure (or whatever name his procedures are labelled) that he followed. In addition and more importantly, Grant was never asked nor did he ever testify whether the system, method, procedure, etc., that he followed had been sufficiently established to have gained general acceptance in the particular field in which it belongs.

*Onken* does not support defendant's request for outright reversal, but a new trial was granted in that case because of the insufficiency of the foundation for the expert testimony. Thus, at best, defendant could get a new trial because of the erroneous admission of evidence.

■ To support an expert opinion, a scientific principle must be "sufficiently established to have gained general acceptance in the particular field in which it belongs." *Alsbach v. Bader,* 700 S.W.2d 823, 828 (Mo. banc 1985), *citing Frye v. United States,* 293 F. 1013, 1014 (D.C.Cir.1923). The defendant's contention that the testimony of the State's experts failed to meet this standard is without merit. Although the experts did not use the exact language of *Frye,* the record reveals they did testify as to the acceptance of their procedures in their field. One expert testified "[t]here are accepted methods for the identification of marijuana vegetation material," he described those methods and he testified that he used those methods in identifying the marijuana in issue. Another expert testified that "[i]n 1974 the American Academy of Forensic Sciences ... came out with a statement saying that these two tests [the same tests referred to by the first expert] in conjunction with each other is positive identification for marijuana." This testimony is sufficient to establish the acceptance of these procedures.

The case law indicates that the mass spectrometry and gas chromatography technique, which was used here to identify the amphetamines, is an extremely reliable test for identification of certain drugs. *State v. Price,* 731 S.W.2d 287, 291 (Mo. App.1987). A State expert in the present case testified that the mass spectrometry and gas chromatography technique was the "most definitive" test for identifying amphetamines. The trial court did not err in allowing the experts to rely on the procedures they had used. Defendant's first point is denied.

■ Next, defendant contends the trial court erred in overruling defendant's motion to sever the five offenses for trial. To review this point we must first examine whether joinder of the offenses in the information was proper. Rule 23.05 provides:

All offenses that are of the same or similar character or based on two or more acts that are part of the same transaction or on two or more acts or transactions that are connected or that constitute parts of a common scheme or plan may be charged in the same indictment or information in separate counts.

Also, liberal joinder of criminal charges is encouraged in the interests of judicial economy. *State v. Moore,* 745 S.W.2d 224, 227 (Mo.App.1987); *State v. Southern,* 724 S.W.2d 605, 608 (Mo.App.1986). In the present case, all five offenses involved the sale of controlled substances to the same person and four were at the same place within a little over one month. All were a result of calls to the same phone number. The Missouri Supreme Court recently reversed two capital murder cases which it found had been improperly joined. *State v. Simmons,* 815 S.W.2d 426 (Mo. banc 1991). Our review of that case leads us to conclude that these charges were properly joined. The record reveals that the sales were part of a common scheme or plan.

■ Since joinder was proper, we must now examine whether the trial court's denial of the motion to sever was an abuse of discretion. *Moore*, 745 S.W.2d at 227. The motion should be denied unless the defendant "makes a particularized showing of substantial prejudice if the offense is not tried separately." Rule 24.07(b). Substantial prejudice means "a bias or discrimination against the defendant or the state which is actually existing or real and not one which is merely imaginary, illusionary or nominal." § 545.885.2, RSMo 1986. The criteria considered by the court includes the number of offenses involved, the complexity of the evidence and the jurors' ability to realistically distinguish the evidence and apply the law intelligently.

*Moore*, 745 S.W.2d at 228. We see nothing in the record to indicate the trial court abused its discretion by denying defendant's motion to sever. The facts here are susceptible to a finding of no substantial prejudice in trying the offenses together. The second point is denied.

Judgment affirmed.

GARY M. GAERTNER and CRANE, JJ., concur.