**STATE of Missouri,**
**Plaintiff/Respondent,**

v.

**John Lee PERKINS,**
**Defendant/Appellant.**

**Nos. 59958, 59959.**

Missouri Court of Appeals,
Eastern District,
Division One.

March 17, 1992.

Emmett D. Queener, Public Defender, Columbia, for defendant/appellant.

John Munson Morris III, Millie Aulbur, Office of the Atty. Gen., Jefferson City, for plaintiff/respondent.

REINHARD, Presiding Judge.

Defendant appeals his convictions for stealing and attempted stealing. We affirm.

Defendant was convicted by a jury of two counts of attempted stealing, § 564.-011, RSMo 1986, and one count of stealing, § 570.030, RSMo 1986. One count of attempted stealing was charged as a class D felony and one as a class B misdemeanor.[1] The jury assessed punishment on the misdemeanor count of attempted stealing at the maximum of six months imprisonment. The court found that defendant was a prior and persistent offender as to the other two counts. The judge sentenced defendant as a prior and persistent offender to consecutive terms of five years imprisonment on the stealing count and four years imprisonment on the felony attempted stealing count. In accordance with the jury's recommendation, defendant was also sentenced to a term of six months on the misdemeanor attempted stealing count, to be served consecutive to the other sentences.[2]

The evidence at trial revealed the following. On August 27, 1989, defendant was observed by a store employee in the Food Giant Grocery Store in Cape Girardeau looking around in a suspicious manner and tugging at the bottom of his shirt, pulling it in front of him. When he began walking toward the store's exit, the employee asked him to stop so he could talk to him for a minute. Defendant said, "No. No, man." He told the employee not to even think about following him out of the store. The employee called for his manager. Defendant left the store with the employee right behind him. When he got to the side of the store, the employee observed defendant pull a bottle of Hennessy's cognac out of his pants and place it on the curb. He then walked toward the employee, saying, "Check me now" and hollering profanities. When the manager arrived, defendant got into his car and drove away. The manager spotted a golden-colored bottle on the seat which he believed to be Seagram's. The pair copied his license plate number. Upon returning to the store, the manager did a spot inventory and discovered one bottle of Seagram's VO and one bottle of Hennessy's cognac were missing.

On September 21, 1990, a store employee of the Radio Shack in the West Park Mall in Cape Girardeau saw defendant crawling on the floor of the store toward the exit holding a video cassette recorder (VCR) in his hand. When spotted by the employee, he dropped the VCR about two or three feet from the exit and walked out of the store.

The employee called his manager and reported that there had been an attempted shoplifting and pointed out the defendant, who was standing just outside the store. As the manager approached him, he walked toward the center of the mall. When he reached the center, defendant turned and approached the manager and asked why he was following him. The manager replied that one of his employees had seen him trying to get out of the store with a VCR. Defendant replied, "You can't do anything about that because I didn't get out of the store with it." The manager told defendant that he needed to stay with him and that the police had been called. About that time, a police car went by the main entrance of the mall. According to the manager, when defendant saw the police car, he "took off running in the opposite direction."

When the police officer arrived, the manager and he searched for defendant. A delivery man told them he was in the Venture store. The pair informed security in that store that they were chasing defendant. A Venture security officer found defendant in the infants department. This

---

1. The information charging the felony count noted that defendant was a prior and persistent offender. *See* §§ 557.036 and 558.016, RSMo 1986.

2. The misdemeanor count of attempted stealing did not plead that defendant was a prior and persistent offender.

officer saw defendant remove a Venture car stereo from his pants and set it behind an infant's car seat.[3] Defendant then exited the store and began running. He was apprehended in the parking lot.

On September 27, 1990, an employee of the J.C. Penney store in the same mall saw defendant looking at her in a suspicious manner. She pretended not to notice and subsequently observed him pick up a woman's rust-colored sweater and place it in a Famous Barr bag on the floor next to him. The employee called the manager. When the manager made eye contact with defendant and asked if he could help him, defendant started toward him and said, "No. I know what you're doing. Don't get me mixed up with someone trying to steal something. I saw those two girls over in the shoe department telling you that I was stealing something." The manager replied, "No. All I'm doing right now is asking you if you need help." Defendant continued toward him and said, "No, I know exactly what you're doing." He then started to leave out the front door. As the manager followed him, he noticed the Famous Barr bag in the spot where defendant had been standing before he had approached the manager. The manager asked, "Sir, did you forget your bag?" Defendant said, "No, that's not my bag."

When told by the employee that she had seen defendant place the rust-colored sweater in the bag, the manager followed defendant outside and told him there was a problem and he needed to come in with him. Defendant said, "No, I'm not going with you." He turned and headed into the parking lot. When the manager followed, he started to run. The manager copied the license plate number of his car as he drove off. An inspection later revealed that defendant had placed three J.C. Penney sweaters in the Famous Barr bag.

Defendant was charged with the class C felony[4] of stealing in the Food Giant incident; the class B misdemeanor of attempted stealing in the J.C. Penney incident; and the class D felony of attempted stealing in the Radio Shack incident. The Food Giant and J.C. Penney charges were joined in one amended information; the Radio Shack charge was filed in a separate amended information. The cases were joined for trial. Defendant moved to sever the charges,[5] alleging that substantial prejudice would result because the jury would likely consider evidence of guilt on one charge as evidence of guilt on "the other charge." Defendant further alleged that he may wish to testify on one charge but not "the other" or put on evidence on one charge but not "the other." The court overruled the motion.

At trial, several employees of the three stores testified and identified defendant. They further testified to previous identifications that they had made of defendant from a group of approximately ten photos shown to them by investigating officers. The police officer who arrested defendant outside the Venture store also testified. The recovered bottle of Hennessy's cognac; the VCR left near the exit of the Radio Shack; and the Famous Barr sack with the J.C. Penney sweaters were identified and entered into evidence. The defendant put on no evidence.

The jury convicted defendant on all three counts. At defendant's request, the issue of punishment was submitted to the jury on the misdemeanor (J.C. Penney) count. The jury assessed "the maximum of 6 months." The court found that defendant was a prior and persistent offender. The court sentenced defendant to consecutive terms of five years imprisonment for stealing; four years for felony attempted stealing; and six months for misdemeanor attempted stealing. This appeal followed.

3. A charge initially filed for this action was dropped by the prosecutor.

4. Defendant had two previous convictions for stealing. Stealing, third offense, is punishable as a class C felony. Section 570.040, RSMo 1986.

5. Defendant's motion prayed only to sever the Food Giant and J.C. Penney charges from the Radio Shack charge. It did not move to sever the Food Giant charge from the J.C. Penney charge.

Defendant's principal point on appeal contends that the trial court erred in failing to sustain his motion to sever. We must first determine whether the offenses were properly joined; if the cases are properly joined, we determine whether the court abused its discretion in refusing to sever them. *State v. Johnson*, 753 S.W.2d 576, 582 (Mo.App.1988). Joinder is either proper or improper under the law, while severance is discretionary. *Id.*

In determining whether defendant was tried on improperly joined charges, we consider only the evidence adduced by the State. Judicial economy favors the liberal joinder of offenses. *State v. Carroll*, 745 S.W.2d 156, 159 (Mo.App. 1987). Charges can be joined if they are of the same or similar character. *Id.;* Rule 23.05. Similar tactics or facts are sufficient to constitute acts of the "same or similar character" permitting joinder.[6] *State v. Clark*, 729 S.W.2d 579, 582 (Mo. App.1987). Acts or tactics do not have to be identical in every detail in order to be joined. *Johnson* at 583; *Carroll* at 159. Tactics which resemble or correspond in nature are sufficient. *State v. Moore*, 745 S.W.2d 224, 227 (Mo.App.1987). The acts should be similar enough to make it likely the same person executed each act. *Id.*

Here, all three charges involve shoplifting by the defendant in business establishments in Cape Girardeau. Not only were the crimes the same (one act of stealing completed and two other acts foiled before completion), the manner in which each was committed was essentially the same. *See Johnson* at 582. In each case, defendant attempted to remove merchandise from a retail outlet by stealth. In each, once detected, he was rude and uncooperative with store personnel and sought to flee the scene. In each, he physically confronted security personnel who pursued him, was abusive and defensive in his demeanor, and insisted that he had done nothing for which he could be charged. Some dissimilarities exist among the three crimes but under Rule 23.05 offenses of a "similar character" are sufficient. *Carroll* at 159. The fact that one of the offenses charged took place approximately one year prior to the others does not defeat proper joinder. *Johnson*, 753 S.W.2d at 583 (six months); *U.S. v. Rodgers*, 732 F.2d 625 (8th Cir.1984) (twenty months).[7] We believe the offenses in this case have sufficient similarities to permit joinder. *Carroll* at 159.

The denial of a motion for severance will not be disturbed absent a clear showing of an abuse of discretion. *Id.* It is insufficient for an accused complaining about the denial of a severance to show merely that he would have had a better chance for acquittal at a separate trial. *Johnson*, 753 S.W.2d at 586. Under Rule 24.07(b) and (c) the party requesting severance must make a "particularized showing of substantial prejudice if the offense is not tried separately" and the trial court must find a "bias or discrimination" against the party "which is actually existing or real and not one which is merely imaginary, illusionary, or nominal." *State v. Moore*, 745 S.W.2d at 227–28. In determining whether actual prejudice exists, the court must consider the number of offenses involved, the complexity of the evidence, and whether the jurors can realistically distinguish the evidence and apply the law intelligently. *Id.* at 228.

In *Moore*, 745 S.W.2d 224, we found no abuse of discretion where defendant was tried on 16 counts involving six incidents. *Id.* at 228. The charges included three first-degree burglaries, one attempted first-degree burglary, one second-degree burglary, two first-degree robberies, one second-

---

6. The recent decision of the Missouri Supreme Court in *State v. Willie Simmons*, 815 S.W.2d 426 (Mo.1991), is not implicated in the present case. *Simmons* involved the application of § 565.044.1, RSMo 1986, regarding homicide offenses under a common scheme or plan analysis as opposed to the same or similar character analysis involved here.

7. In addition, defendant's motion to sever did not seek to sever the Food Giant charge (August 27, 1989 incident) from the J.C. Penney charge (September 27, 1990 incident) but only the Radio Shack charge (September 21, 1990 incident) from the other two charges.

degree robbery, five rapes, and two sodomy charges. *Id.* at 226. We noted that the evidence consisted primarily of testimony by victims, treating physicians, police, and fingerprint experts and that the jury was correctly instructed to consider each offense separately. *Id.* at 228. We found nothing in the record to indicate the inability of the jury to distinguish the evidence and apply the law to each offense. *Id.*

Here, there are only three charges; the evidence consisted mainly of testimony from employees of victimized stores and police and was a great deal less complex; the jury was correctly instructed to consider each charge separately; and we similarly find nothing in the record to indicate the jury's inability to distinguish the evidence and apply the law. Point denied.

Defendant's second point on appeal contends that the trial court erred in denying his motion in limine to preclude testimony by the Venture security officer that he observed defendant remove a car stereo from his pants and attempt to conceal it inside the Venture store in that that testimony was irrelevant and allowed the jury to consider evidence of an uncharged crime. Under Missouri law, evidence of other crimes is admissible where it tends to establish motive, intent, the absence of mistake, identity, or a common scheme or plan embracing the commission of two or more crimes so related the proof of one tends to establish the other. *State v. Seemiller,* 775 S.W.2d 273, 275 (Mo.App.1989); *State v. Crockett,* 801 S.W.2d 712, 714 (Mo.App. 1990). Arguably, the evidence was relevant to show intent and absence of mistake (defendant's proffered explanation in each of the incidents) as well as a common scheme or plan to shoplift merchandise from retail stores.[8] In any event, it was admissible to provide a clear and coherent narrative of the events leading to the arrest of defendant. *State v. Sanders,* 761 S.W.2d 191, 193 (Mo.App.1988). *See also*

---

8. We note that in each case defendant would abandon the merchandise and flee when detect-

---

*State v. West,* 743 S.W.2d 592, 593 (Mo. App.1988). Point denied.

Defendant's final point contends:

The court erred in overruling appellant's motion to dismiss or in the alternative to stay the proceedings because the jury selection process failed to comply with the declared policy of §§ 494.400 to 494.505, RSMo 1989, in violation of appellant's right to equal protection and due process of law as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution in that appellant's jury failed to represent a fair cross-section of the community in Cape Girardeau County.

At the pre-trial hearing on defendant's motion to quash, defendant's counsel admitted no evidence was offered to support the motion.

THE COURT: How—well, all—I'll go along with you up to paragraph eight. It says "The non random selection procedures of the petit jury panels in the County of Cape Girardeau and the systematic under representation of certain cognizable groups violates ..." How do you know that? Do you have evidence of that?

MS. BOONE [Defense Counsel]: I have *no* demographic evidence. The only evidence I have—

THE COURT: No, do you have any evidence at all? I don't care if it is demographic, out of your briefcase, or from the moon. Do you have any evidence?

MS. BOONE: Just the fact that I've have had two jury panels, and I have sat with Kimberly in a couple of jury panels and there has not been a representation of blacks. If you drive through Cape, there are quite a few black citizens in Cape.

THE COURT: What does it represent? Less than two percent of the population of Cape Girardeau County?

MR. SUTHERLAND [Prosecuting Attorney]: I think there's 6,000.

---

ed, while denying the offense and refusing to cooperate with employees who confronted him.

THE COURT: You don't even know that, do you?

MR. SUTHERLAND: Six thousand out of about 78,000.

MS. BOONE: I don't have the census.

MR. SUTHERLAND: A little more than two percent. Closer probably to five, but still, that's—

THE COURT: Do you have any evidence you want to present on that?

MS. BOONE: *No,* we—we're just requesting that it be filed. (Emphasis added.)

Defendant presents demographic evidence as an appendix to his brief on appeal, but we cannot convict the trial court of error on the basis of evidence not before it. Point denied.

Judgment affirmed.

GARY M. GAERTNER and CRANE, JJ., concur.