**STATE of Missouri, Respondent,**

v.

**Joel F. PARKER, Appellant.**

No. 22335.

Missouri Court of Appeals,
Southern District,
Division One.

March 8, 1999.

Motion for Rehearing and Transfer to Supreme Court Denied March 26, 1999.

Application for Transfer Denied
April 27, 1999.

Amy M. Bartholow, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Linda Lemke, Asst. Atty. Gen., Jefferson City, for respondent.

CROW, Judge.

A jury found Defendant, Joel F. Parker, guilty of the class B felony of distributing a controlled substance (cocaine), § 195.211, RSMo 1994, and assessed punishment at seven years' imprisonment. The trial court entered judgment per the verdict. This appeal followed.

The sole issue confronting this court is whether the trial court misapplied the bewildering rule governing admissibility of criminal behavior by the accused other than the conduct for which he is on trial.

On March 11, 1997, law enforcement officers in Springfield arrested a woman—Grace[1]—for possession of cocaine. According to one of the officers, Defendant "was the target of our investigation."

The officers asked Grace to help them in their investigation by purchasing cocaine from Defendant. One of the officers told Grace that if she cooperated "she wouldn't go to jail that night, and her cooperation would be known to the prosecutors."

Grace agreed to cooperate.

The officers took Grace to their headquarters. Using an "undercover phone" there, Grace, who "had [Defendant's] pager number,"[2] placed a phone call to the pager, asking that Defendant call her at a number the officers "placed in the pager." Within minutes, Defendant phoned Grace at the designated number. Although he did not identify himself, she recognized his voice.

Grace told Defendant she "needed to come over and see him." He told her "to come on over." The officers were in Grace's presence during the phone conversation and recorded it.

The officers furnished Grace $300 from "the Missouri State Highway Patrol ... Investigative Fund." They then accompanied her to an "apartment complex" at 1253 East McDaniel in Springfield (the site where she had told them she bought cocaine). Through a "City Utilities check," the officers learned the utilities at Apartment 3 were registered to Defendant. The telephone for that apartment was also registered to him.

When the entourage arrived (sometime in the early morning hours of March 12, 1997), Grace approached the apartment complex on foot. No officer could see which apartment she entered.

Grace testified she knocked on Defendant's door and he answered. She entered his apartment. Asked what occurred next, Grace answered: "I gave him $300, and he gave me an eighth of an ounce of cocaine." Grace returned to the parking lot and handed the cocaine—3.5 grams—to one of the officers.

The transaction described in the preceding paragraph was the basis of the conviction from which Defendant brings this appeal. This opinion henceforth refers to that transaction as "the subject sale."

Prior to trial, Defendant filed a motion in limine asking the trial court to forbid the State from presenting evidence that during the two weeks preceding the subject sale, Grace "purchased cocaine from defendant four different times averaging a sale of one-eighth ounce per transaction."

The trial court denied the motion, remarking that such evidence "can be brought in as relevant evidence to establish common scheme or plan, and knowledge of what [Defendant] knew was going on on March 12th when this sale occurred."

During Grace's testimony, the prosecutor asked her how often she bought cocaine from Defendant.

Defendant's lawyer immediately objected. Outside the hearing of the jury, Defendant's lawyer reminded the trial court of the motion in limine, arguing that "any alleged conduct that is not charged ... is not relevant to whether or not she purchased cocaine from him on the night in question."

The prosecutor responded that such evidence "goes to his knowledge of the cocaine at the time he sold it."

The trial court overruled the objection. Grace's testimony resumed over Defendant's "continuing objection":

"Q ... In the ten days prior to March 11th, had you purchased any cocaine from Joel Parker?

A Yes.

Q And in that time period, how many time [sic] had you bought cocaine from him?

A I don't know, probably eight or ten times.

---

1. Grace is the woman's forename; there is no reason to reveal her surname.

2. Grace avowed she had paged Defendant on "very many occasions" prior to March 11, 1997.

"Q Okay. And what type of cocaine did you buy specifically, was it crack cocaine or powder cocaine?

A Powder cocaine.

Q Now did, during that time frame, did Mr. Parker ever make any statements to you about the substance he was selling you? He knew what it was?

A Yeah, he called it cocaine.

. . . .

Q . . . what quantity did you usually buy?

A Usually an eighth of an ounce.

Q Okay. And how much did he usually charge you for that?

A Three hundred.

Q Three hundred dollars?

A [Nods head.]"

Defendant's point relied on reads:

"The trial court erred and abused its discretion in overruling [Defendant's] objections to the introduction of evidence of other crimes concerning his prior sales of cocaine, because these rulings violated [his] rights to due process and a fair trial before a fair and impartial jury guaranteed by [sundry federal and state constitutional provisions] in that his alleged prior sales of cocaine had little, if any, probative value to the sale for which [he] was charged, and the prejudicial effect of this evidence grossly outweighed any probative value because [he] was charged with distribution of cocaine and his alleged prior sales were introduced merely to show that [he] is a person of bad character with a propensity to commit this type of crime."

The common law rule pertaining to Defendant's claim of error defies succinct exposition. The following passage from *State v. Bernard*, 849 S.W.2d 10, 13 (Mo. banc 1993), is probably as short an explanation as can be found:

"The general rule concerning the admission of evidence of uncharged crimes, wrongs, or acts is that evidence of prior uncharged misconduct is inadmissible for the purpose of showing the propensity of the defendant to commit such crimes. There are exceptions to the rule. Evidence of prior misconduct of the defendant, although not admissible to show propensity, is admissible if the evidence is logically relevant, in that it has some legitimate tendency to establish directly the accused's guilt of the charges for which he is on trial, and if the evidence is legally relevant, in that its probative value outweighs its prejudicial effect. The balancing of the effect and value of evidence rests within the sound discretion of the trial court.

Generally, evidence of other, uncharged misconduct has a legitimate tendency to prove the specific crime charged when it tends to establish: (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other; [or] (5) the identity of the person charged with the commission of the crime on trial. The five enumerated exceptions have sometimes been difficult to define and apply. Evidence of prior misconduct that does not fall within one of the five enumerated exceptions may nevertheless be admissible if the evidence is logically and legally relevant." (Citations omitted.)

A historical account of the development of the "common scheme or plan" exception—one of the exceptions relied on by the trial court in the instant case—is set forth in *Bernard*, 849 S.W.2d at 13–16. The majority opinion in *Bernard* and the two separate opinions accompanying it illustrate the vexing task a trial court faces in ruling on the admissibility of evidence of criminal behavior by the accused other than the conduct for which he is on trial. *Id.* at 17–27.

Some of the cases where appellate courts have addressed the problem involve instances where the accused presented evidence and the State sought to introduce, or did introduce, evidence of uncharged criminal behavior to contradict the accused's evidence. Such cases include: *State v. Clover*, 924 S.W.2d 853 (Mo. banc 1996); *State v. Collins*, 669 S.W.2d 933 (Mo. banc 1984); *State v. Carter*, 475 S.W.2d 85 (Mo.1972); *State v. Reed*, 447 S.W.2d 533 (Mo.1969); *State v.*

*Fox*, 882 S.W.2d 214 (Mo.App. W.D.1994); *State v. Burr*, 542 S.W.2d 527 (Mo.App.1976).

Those cases are of little guidance in the instant case because, unlike those cases, Defendant presented no evidence. Consequently, Grace's testimony about buying cocaine from Defendant "probably eight or ten times" prior to the subject sale did not rebut or contradict any evidence presented by Defendant.

The cases most pertinent to Defendant's claim of error are those where the accused offered no evidence. This court has decided two such cases involving sales of controlled substances: *State v. Owen*, 753 S.W.2d 114 (Mo.App. S.D.1988); *State v. Smith*, 884 S.W.2d 358 (Mo.App. S.D.1994).

In *Owen*, a witness testified that twelve days before the sale for which the accused was tried, the accused arranged for the witness to buy marijuana from a third person. 753 S.W.2d at 114. The State maintained that the evidence of the earlier transaction "demonstrated that the [accused] had a knowledge of drugs and had access to obtain drugs, and thus, was directly probative to the issues of intent and motive in the sale of the controlled substance with which he was charged." *Id.* This court rejected the State's argument, saying: "[E]vidence of the prior transaction had little probative value and was so highly prejudicial that it should not have been received." *Id.* at 114–15. This court reversed the conviction and remanded the case for retrial.

In *Smith*, an undercover detective testified that between one and two weeks *after* the marijuana sale for which the accused was tried, the detective bought marijuana from the accused. 884 S.W.2d at 359. The State insisted the evidence was admissible "in that it tended to prove [the accused's] motive, intent and knowledge that the substance she was charged with selling ... was marijuana and it tended to establish the identity of [the accused] with the crime charged." *Id.* This court, relying on *Owen*, 753 S.W.2d at 114, held the evidence was improper and compelled reversal. *Smith*, 884 S.W.2d at 359. This court remanded the case for retrial.

This court finds *Owen* indistinguishable from the instant case. This court further finds that the only difference between *Smith* and the instant case is that in *Smith* the uncharged criminal behavior occurred *after* the sale for which the accused was tried, whereas in the instant case the other sales recounted by Grace occurred *before* the subject sale.

In *State v. Sladek*, 835 S.W.2d 308 (Mo. banc 1992), Judge Thomas, in a concurring opinion acknowledging the struggle courts have in determining admissibility of evidence of the accused's uncharged criminal behavior, pointed out that "in a few areas, the courts have weighed certain evidence so frequently that rules have been established regarding which way the scales tip." *Id.* at 314. He added: "Both the general rule of exclusion for evidence of prior crimes and the exceptions to that rule come within the category of relevancy rules that courts have faced on enough occasions that the results are preordained." *Id.*

Judge Thomas's observations are apropos here. This court has twice (*Owen* and *Smith*) faced the issue presented in the instant appeal. On both occasions, this court held evidence of other sales of contraband by the accused inadmissible.

The State makes no effort to distinguish *Owen* or *Smith*. Indeed, the State's brief ignores them. Instead, the State cites *State v. Crockett*, 801 S.W.2d 712 (Mo.App. E.D. 1990), a case seemingly contrary to *Owen* and *Smith*.

This court observes that *Crockett* was decided before *Sladek*, 835 S.W.2d at 308, and *Bernard*, 849 S.W.2d at 10. A careful reading of *Sladek* and *Bernard* reveals a trend by the Supreme Court toward stricter limits on admissibility of evidence of criminal behavior by the accused other than the conduct for which he is on trial. Consequently, this court concludes *Owen* and *Smith*, not *Crockett*, govern the instant appeal.

Consistent with *Owen* and *Smith*, this court holds the trial court erred in receiving Grace's testimony about the "eight or ten" occasions she bought cocaine from Defendant prior to the subject sale. The judgment is

reversed and the cause is remanded to the trial court for a new trial.

PREWITT, P.J., and PARRISH, J., concur.

## ON MOTION FOR REHEARING OR TRANSFER TO SUPREME COURT OF MISSOURI

PER CURIAM.

In a "Motion for Rehearing or Transfer to the Missouri Supreme Court," the State avers this court, in declaring that the Defendant presented no evidence, overlooked testimony adduced by Defendant's lawyer from the State's witnesses on cross-examination. Such evidence, says the State, included testimony that (a) Defendant did not identify himself when he phoned Grace in response to the page, (b) the officer who searched Grace before she went to Defendant's apartment on the occasion in question made only a superficial search, (c) no officer accompanied Grace to Defendant's apartment on that occasion, hence no officer saw Grace enter or exit Defendant's apartment, and (d) Grace was getting a reduction in sentence in exchange for testifying against Defendant.

The State insists that the testimony itemized in the preceding paragraph tended to show Grace set up Defendant in order to get a reduction in her sentence. The State maintains that inasmuch as Defendant's lawyer elicited the above testimony, this court erred in holding that Grace's testimony about buying cocaine from Defendant "probably eight or ten times" prior to the subject sale did not rebut or contradict any evidence presented by Defendant.

This court, of course, did not overlook the evidence catalogued by the State. Indeed, items "(a)" and "(c)" appear in this court's opinion.

■ Moreover, the State fails to explain how Grace's testimony about her earlier purchases of cocaine from Defendant tended to rebut Defendant's contention that Grace set him up in order to get a lesser sentence. Had Defendant's lawyer presented evidence—either by cross-examination of the State's witnesses or by direct examination of witnesses called by Defendant—that Defendant was unaware that the substance he sold Grace on the occasion in question was cocaine, or that he never had possession of, or sold, cocaine anytime during the ten days preceding the occasion in question, Grace's testimony about her earlier purchases of cocaine from Defendant would have rebutted such evidence.

However, Defendant's lawyer presented no such evidence. Consequently, Grace's testimony about her earlier purchases of cocaine from Defendant rebutted nothing.

The sole effect of Grace's testimony about her earlier purchases of cocaine from Defendant was to demonstrate that Defendant had a propensity to sell cocaine. As explained in *Bernard*, 849 S.W.2d at 13, evidence of uncharged criminal behavior by an accused is inadmissible to show his propensity to commit the crime charged.

The State's post-opinion motion is denied.